**Joseph CICERO, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (M & Q PACKAGING), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 24, 1999.

Decided Feb. 24, 2000.

Lester Krasno, Pottsville, for petitioner.

Howard D. Kauffman, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, J., and LEADBETTER, J.

DOYLE, President Judge.

Joseph Cicero petitions this Court for review of a Workers' Compensation Appeal Board (Board) order that affirmed the decision of a Workers' Compensation Judge (WCJ) granting Cicero's claim petition, but suspending his benefits as of the date of injury pursuant to the relevant provisions of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

The WCJ found in pertinent part as follows. Cicero worked as a bag machine operator for M & Q Packaging (Employer) at an average weekly wage of $243.50 when he sustained an injury to the first finger of his right hand on October 30, 1995.[1] Cicero was working the third shift at the time of his injury. After receiving medical treatment, Cicero resumed his regular job. Because he was not able to perform this job, however, he was re-assigned to a light-duty job at wages equal to his pre-injury earnings.

On November 18, 1995, Employer furloughed Cicero. Cicero was working the third shift when he was furloughed. At that time, Employer eliminated two machine operator positions from that shift, and the remaining three employees were moved to other shifts. Cicero's prior misconduct[2] was a factor in why he was not transferred to a different shift, but his layoff was not due to his work injury. Since August 26, 1996, Cicero has been working for another employer for $5.00 per hour, stuffing pillows for seven and one-half hours per day.

In support of his claim petition, Cicero introduced the deposition testimony of Dr. Mohammed Aslam, a neurologist. Dr. Aslam, who had previously treated Cicero, first saw him for his work-related injury on November 20, 1995. Dr. Aslam diagnosed Cicero's condition as post-traumatic causalgia and reflex sympathetic syndrome. Dr. Aslam stated that, during the healing period, the nerve endings become very raw and any pressure at those points results in extra sensitivity. Dr. Aslam reevaluated Cicero on January 25, 1996, March 4, 1996, and April 1, 1996. He believed Cicero's condition remained the same and that he was still symptomatic as of April 1, 1996. Dr. Aslam believed that, as of April 1, 1996, Cicero could not perform the duties of his regular job, since it required that he use both hands. Although the WCJ did not credit Dr. Aslam's testimony that Cicero had reflex sympathetic dystrophy, he did accept Dr. Aslam's opinion that, as of April 1, 1996, Cicero could not perform his regular job.

For its part, Employer offered the deposition testimony of Dr. Michael W. Born, who is board-certified in general surgery and plastic and reconstructive surgery. Dr. Born examined Cicero on June 12, 1996. He determined that Cicero never had reflex sympathetic dystrophy, sympathetically mediated pain syndrome, or causalgia. The WCJ decided that Cicero never had reflex sympathetic dystrophy, since Dr. Born, unlike Dr. Aslam, provided a detailed explanation of reflex sympathetic dystrophy and causalgia, which the WCJ found persuasive. Dr. Born concluded that Cicero had been injured but had recovered well.

The WCJ found that "[s]ubsequent to the work injury of October 30, 1995, [Cicero] never lost any wages as a result of that

---

1. It is unclear whether Cicero was actually injured on October 30, 1995 or a week earlier, on October 23, 1995, as the WCJ uses both dates in his opinion. The discrepancy is not material to our decision here, and we will refer to the date of injury as October 30, 1995, the date used by the parties in their briefs and the WCJ in his order.

2. The WCJ did not explain the nature of this misconduct. Sidney Conway, Employer's witness, testified, however, that Cicero had threatened a co-worker. (Notes of Testimony, N.T., September 9, 1996, at 11–13.)

work injury." (WCJ's Decision and Order dated April 15, 1997, at 9; Finding of Fact No. 41). He also found that "[i]t is unknown whether [Cicero's] actual earnings [sic] power was subsequently adversely affected by the work injury of October 30, 1995" because Cicero "failed to present any persuasive evidence that he was unable to obtain or perform subsequently available positions because of his work injury. *See Harle [v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.),* 540 Pa. 482, 658 A.2d 766 (1995)]." (WCJ's decision at 9; Finding of Fact No. 42.)

The WCJ concluded as a matter of law that Cicero failed to meet his burden of proving that any loss of wages was related to his October 30, 1995 work injury. The WCJ also concluded that Cicero met his burden of proving that, as of the date of Dr. Born's examination, he was not fully recovered from his work injury. The WCJ granted Cicero's claim petition, but suspended his benefits as of October 30, 1995, the date of injury as set forth in the claim petition. (WCJ's decision at 12.)

On appeal, the Board affirmed the WCJ's decision. Cicero now appeals to this Court. He argues that the Board committed legal error by affirming the WCJ's decision granting his claim petition but immediately suspending benefits, instead of reinstating his benefits when he was furloughed from his light-duty position.[3]

■ As we see it, part of the difficulty here is that Employer re-assigned Cicero to a light-duty job at his regular earnings prior to furloughing him on November 18, 1995, but Cicero did not file a claim petition until more than one week after his furlough. In rendering his decision, the WCJ stressed that this matter concerned a claim petition rather than a reinstatement petition.[4] Citing *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 141, 634 A.2d 592, 595 (1993), the WCJ noted that, in a **claim** petition, "the Claimant [bears] '. . . the burden of establishing a right to compensation and of proving all necessary elements to support an award.'" (*See* WCJ's decision at 10.) While this statement of an employee's burden in a claim petition is accurate, the WCJ erred in further stating, *inter alia,* that "[b]ecause this was a Claim Petition, it was the Claimant's burden to prove that at some time subsequent to November 18, 1995, the Claimant [sic] loss of wages was not a result of the economic layoff, but was a result of his work injury." (*Id.*) We begin by noting that it is not the **form** of the petition that is controlling. *See Volk v. Workmen's Compensation Appeal Board (Consolidation Coal Co.),* 167 Pa.Cmwlth. 75, 79, 647 A.2d 624, 626, n.3 (1994).

■ Here, the WCJ awarded Cicero benefits and then suspended them as of October 30, 1995, the injury date set forth in Cicero's claim petition. A suspension of benefits is proper where a claimant's earning power is no longer affected by the work-related disability. *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.),* 664 A.2d 1081 (Pa.Cmwlth.1995), *petition for allowance of appeal granted,* 544 Pa. 670, 677 A.2d 840 (1996), *affirmed,* 550 Pa. 276, 705 A.2d 432 (1997). In this instance, the WCJ suspended Cicero's benefits because he decided that, while he had a residual physical ailment, Cicero's loss in wages was due to his furlough, which, in turn, was unrelated to his work injury.

---

3. Our review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were unsupported by substantial evidence. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth.1996).

4. Cicero attempted to amend his claim petition to a reinstatement petition, but the WCJ, noting that a notice of compensation payable had not been filed, characterized Cicero's petition as a claim petition. (WCJ's decision at 3.)

Although the WCJ relied in large part on our Supreme Court's *Harle* decision in asserting that Cicero had the burden of proving that his disability after the layoff continued, that case is inapposite. In *Harle*, the claimant, who had suffered a work-related injury to his left thumb, **was released to full duty work with no restrictions**, although he had some residual physical discomfort. However, **the claimant's employer had stopped doing business** prior to the claimant's release to full duty work, **and the employer had filed a termination petition, alleging that the claimant's disability had ceased. Afterward, the claimant admitted to obtaining a job with another employer similar to the one that he had had with his first employer, but at a lesser wage.** Our Supreme Court explained that "[g]iven Harle's testimony that he was employed full-time and had not lost any work time due to the injury, it can be concluded that any difference between Harle's pre-injury wages and post-injury earning power was due to factors other than the injury to his thumb." *Id.*, 540 Pa. at 489, 658 A.2d at 769–770. Further, the Supreme Court said that a suspension rather than a termination of the claimant's benefits was proper, since the claimant continued to experience some residual physical disability.

■ In the matter *sub judice*, the WCJ awarded Cicero benefits, which he then immediately suspended, because he determined that Cicero suffered no wage loss due to his work injury, **despite Cicero's inability to perform his regular job at the time of his furlough.** If the petition were treated as one of reinstatement, since the WCJ granted and then promptly suspended Cicero's benefits, and Cicero requested to amend his petition, under our decision in *Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth.1997), Cicero would have been entitled to the rebuttable presumption that his disability, *i.e.*, loss of earning power, is causally related to the work injury. In this regard, "the claimant is entitled to a reinstatement of benefits **unless the employer** provides available work within the claimant's physical restrictions, **or** establishes before the appropriate tribunals that it is not the claimant's disability due to the work-related injury which is causing the present loss of earnings." *Id.*, 688 A.2d at 262. (Emphasis in original and added; footnotes omitted.)

■ Here, there is no doubt that Employer did not provide Cicero with available light-duty work after his furlough. Further, although the WCJ decided, based on the credible testimony of both Cicero and Sidney Conway, Employer's witness, that Cicero's wage loss "was due to an economic layoff totally unrelated to his work injury" (WCJ's decision, at 11), the record simply does not support this determination. For instance, Cicero testified that he was the **only** person whom Employer furloughed. (N.T., Hearing of January 29, 1996, at 11–12.) Further, Conway, Employer's personnel manager, also testified that Cicero was the only person furloughed from third shift, that two other people were transferred to other jobs with Employer, that another person quit, and that Cicero had a mark of misconduct against him, while the operator whom Employer kept employed did not. (N.T., Hearing of September 9, 1996, at 9–11.) Therefore, it is beyond peradventure that Employer had work available, but that it was not offered to Cicero because of his past "misconduct." Yet no allegations were made that Cicero was chargeable with willful misconduct **when he was laid off.** The record simply does not reflect the fact that Employer, for economic reasons, could no longer retain any of its third-shift employees, although Employer may have eliminated that shift as a management decision.[5] In our estimation,

---

5. Despite Conway's statements that Employer laid off Cicero instead of the remaining opera- tor due to Cicero's past misconduct, Conway acknowledged that Cicero "wasn't fired."

then, Employer failed to rebut the presumption that Cicero's work-related disability, or loss of earning power, continued. Therefore, the WCJ erred in suspending Cicero's benefits as of the date of his injury.

For all of the above reasons, the Board's order is affirmed in part and reversed in part. The Board's order is reversed to the extent that it affirmed the WCJ's decision suspending Cicero's benefits as of October 30, 1995. This case is remanded to the Board for remand to the WCJ for a calculation of total disability benefits beginning November 18, 1995 (the date of Cicero's furlough) through August 25, 1996, and for a calculation of any partial disability benefits thereafter, because after that date Cicero was working for another employer at reduced wages.

### ORDER

**NOW**, February 24, 2000, the Order of the Workers' Compensation Appeal Board, No. A97–2218, dated May 25, 1999, is affirmed in part and reversed in part. The Board's order is reversed to the extent that it affirmed the WCJ's decision suspending Cicero's benefits as of October 30, 1995. This case is remanded to the Board for remand to the WCJ for a calculation of total disability benefits beginning November 18, 1995 (the date of Cicero's furlough) through August 25, 1996, and for a calculation of any disability benefits awarded thereafter.

Jurisdiction relinquished.

(N.T., Hearing of September 9, 1996, at 14.) In any event, this case is obviously not one involving unemployment compensation principles of fault and willful misconduct.