Stephen KLARICH, Petitioner,

v.

**WORKERS' COMPENSATION AP-PEAL BOARD (RAC'S ASSO-CIATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 2, 2002.
Decided March 21, 2003.

Patrick M. Donan, Philadelphia, for petitioner.

Nancy Farese, Blue Bell, for respondent.

Before: FRIEDMAN, Judge, and LEADBETTER, Judge and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEADBETTER.

Stephen Klarich petitions this court for review of a Workers' Compensation Appeal Board (Board) order. The Board affirmed the decision of a Workers' Compensation Judge (WCJ) which awarded Klarich benefits for medical bills but denied him wage loss benefits.[1]

Klarich twisted his low back in the course of his employment as a construction electrician on April 13, 1992. Klarich continued to work at his time-of-injury job while receiving medical treatment until approximately July 25, 1992, when he was laid off by RAC's Association (employer). He then underwent intermittent periods of work and layoff, also as a construction electrician, with three other companies, Rite–Way Electrical Construction, Joseph Madden & Sons Electrical, and Alliance Electrical Construction. He was working at Joseph Madden & Sons at the time of his hearing before the WCJ.[2]

In support of his claim petition filed in July of 1993, Klarich testified to the various electrician jobs he performed after his work-related injury. He also adduced the deposition testimony of his treating physician, Dr. David Willner, a board-certified orthopedic surgeon, and his treating chiropractor, Dr. Mark Saracino. In defense of the petition, employer adduced the deposition medical testimony of Dr. Michael Mandarino, also an orthopedic surgeon.

Dr. Willner testified that he advised Klarich to avoid excessive lifting (over 20 pounds), twisting and bending, and any activities that might jar his spinal structures and produce permanent injury to the sciatic nerve. He further explained that Klarich continued to need conservative medical treatment and that he had not fully recovered from his April 13, 1992,

1. The WCJ decided that Klarich suffered a work-related injury without wage loss in his decision circulated March 12, 1996. By decision dated December 10, 1997, the Board affirmed the WCJ's decision in this regard, but remanded the case for resolution of inconsistent findings of fact and conclusions of law having to do with medical expenses incurred by Klarich for chiropractic treatment. Since that time, the Board has issued two more decisions in this case. In doing so, it has adopted and incorporated its December 10, 1997, opinion, thereby reaffirming the WCJ's decision awarding Klarich payment of medical bills but denying him wage loss benefits.

2. Klarich's weekly wage with employer was $1037.00. His weekly pay with Rite Way Electrical was $997.00, and with Joseph Madden & Sons (where he was employed at the time of the WCJ's hearing), it was $1013.00. Klarich's rate of pay at Alliance was $27.50 per hour.

work injury. On the other hand, Dr. Mandarino found no objective evidence of disability and opined that Klarich could resume his pre-injury work without restrictions. The WCJ found the testimony and opinions of Dr. Willner credible and determined that they were more persuasive than the testimony and opinions of Dr. Mandarino. The WCJ specifically accepted Dr. Willner's testimony over that of Dr. Mandarino wherever there was a conflict. He also found Klarich's testimony on his own behalf credible and persuasive.

Based on Klarich's testimony, the WCJ determined that Klarich sustained a work-related injury, but did not sustain a resulting wage loss. Instead, he found that the cause of each of Klarich's furloughs was economic. Consequently, the WCJ awarded Klarich only medical and litigation expenses, not benefits for wage loss. After the Board issued its March 27, 2002 order affirming the WCJ's decision, Klarich appealed to this court, arguing that the wage loss portion of his claim should not have been denied where he was laid off from restricted work through no fault of his own.[3]

■ As our Supreme Court has noted, "In a proceeding on a claim petition, the claimant bears the burden of establishing a work-related injury rendering the claimant incapable of performing the time-of-injury job." *Vista Int'l Hotel v. Workmen's Comp. Appeal Bd. (Daniels)*, 560 Pa. 12, 22, 742 A.2d 649, 654 (1999). Here, claimant simply did not meet this burden. It is undisputed that Klarich continued working at his time-of-injury job until he was furloughed for economic reasons. Nonetheless, Klarich supports his argument by citing cases dealing with the standards for reinstatement of benefits which have been granted (by way of an NCP or claim petition) and then suspended. Although for the reasons stated below, we do not believe this case is properly subject to a reinstatement of benefits analysis, the underlying principles—and thus the result—will be the same under both analytical frameworks. Indeed, this is necessarily so if all similarly situated claimants are to be accorded the same substantive rights.

■ The approach urged by Klarich is not without precedent. In *Cicero v. Workers' Compensation Appeal Board (M & Q Packaging)*, 746 A.2d 1189 (Pa.Cmwlth. 2000), as here, the claimant continued working without a loss of wages after his work-related injury, and did not file a claim petition until after he was laid off. The WCJ granted the claim petition, but found that the work-related injury did not cause a loss of wages and therefore granted and simultaneously suspended disability benefits as of the date of injury. On appeal, this court explained that, under those circumstances, the WCJ erred in utilizing the burden of proof applicable to claim petitions. Instead, since at the time of Cicero's layoff his procedural posture was that of suspended benefits, the appropriate analysis was that applicable to reinstatement petitions. As our Supreme Court has noted, "[I]n assessing the relevant burdens in a claim proceeding, workers' compensation judges must apprehend the stage to which the proceedings have advanced." *Vista Int' l Hotel*, 560 Pa. at 28 n. 11, 742 A.2d at 658 n. 11.

■ Although similar, this case differs from *Cicero* in two important respects.

---

**3.** Based upon the issue presented, the scope of our review in this case is limited to a determination of whether an error of law has been committed, a question over which we exercise plenary review. *See Magulick v. Workers' Comp. Appeal Bd. (Bethlehem Steel Corp.)*, 704 A.2d 176 (Pa.Cmwlth.1997).

Cicero, a machine operator, was not able to perform his time-of-injury job after he was hurt and was reassigned to light-duty work. 746 A.2d at 1190. After his furlough, his work for a subsequent employer (stuffing pillows) was entirely unlike his prior job.[4] Although Cicero's light-duty job with his first employer was without a loss of wages, his circumstances established a loss of earning power.

> Where a claimant establishes that a work-related injury prevents a return to the time-of-injury job, a loss of earnings capacity is established. Once such a loss has been demonstrated, the claimant should generally be entitled to benefits, unless the employer can demonstrate that employment is available within the claimant's restrictions. Consistent with the purposes of the Act, as well as our decisional law and the decisions of the Commonwealth Court, as a general rule, where a work-related disability is established, a post-injury involuntary discharge should be considered in connection with the separate determination of job availability rather than as dispositive of loss of earnings capacity.

*Vista Int'l Hotel,* 560 Pa. at 27, 742 A.2d at 657.

Klarich, however, in spite of the limitations imposed by Dr. Willner, did continue to perform the duties of his time-of-injury job. Thus he did not establish a loss of earning capacity resulting from his injury, a prerequisite to the presumption that he is entitled to benefits unless employment is available. Accordingly, the WCJ in this case did not grant and immediately suspend disability benefits as did the WCJ in *Cicero,* but instead simply denied them. This procedural distinction is of little importance *per se;* it is significant because it

properly mirrors the factual distinction between the two cases. In sum, this case never advanced procedurally or in substance to the suspension/reinstatement stage.

 Moreover, as noted above, the core analysis would not differ if we were to treat this as a reinstatement case. As we have repeatedly noted:

> Where a claimant returns to work under a suspension, with restrictions, that is, does not return to his or her time-of-injury job, but rather to a modified position, and is subsequently laid off and petitions for the reinstatement of benefits, the claimant is also entitled to the presumption that his or her disability, i.e., loss of earning power, is causally related to the continuing work injury. . . .

> Conversely, where a claimant returns to work under a suspension, without restriction, to his or her pre-injury job, is subsequently laid off, and then petitions for reinstatement, the claimant has the burden to affirmatively establish that it is the work-related injury which is causing his or her present loss of earnings. That is, while the claimant still enjoys the presumption that some work-related medical injury continues, the claimant is not entitled to the presumption that his or her present disability, i.e., loss of earnings, is causally related to that work injury. . . .

*Teledyne McKay v. Workmen's Comp. Appeal Bd. (Osmolinski),* 688 A.2d 259, 262 (Pa.Cmwlth.1997). [footnote and citations omitted]. Moreover, medical restrictions are material only if they require modification of the claimant's job duties. Where a claimant, in spite of those limitations, is

---

4. In addition, this court found no support in the record for the WCJ's finding that Cicero's layoff resulted from economic factors unrelated to the work injury. *Id.* at 1192. In the instant case, that finding is fully supported.

still able to perform his time-of-injury job, he has the burden to establish—just as in a claim petition—that his loss of earnings is caused by the work injury. *Folk v. Workers' Comp. Appeal Bd. (Dana Corp.),* 802 A.2d 1277 (Pa.Cmwlth.2002), *alloc. denied,* —— Pa. ——, 813 A.2d 846 (2002).[5]

■ Although, in the matter *sub judice,* the WCJ credited the testimony of Dr. Willner, Klarich's treating physician, that Klarich could return only to restricted duty work, he also credited Klarich's testimony on his own behalf. Although we disagree with the Board's characterization of Klarich's limitations as "self-imposed[,]"[6] Klarich testified that, while he still had continuing pain and physical restrictions, he effectively performed the same work after his April 1992 injury as he had done before.[7] Therefore, even if

5. We explained:

Under such circumstances, we hold that it is as though Claimant returned without restriction and, therefore, he is not entitled to the presumption that his loss of earnings is causally related to the work injury. We reach this conclusion because under the quoted language in *Teledyne,* the presumption applies where the claimant returns with restriction to a job other than the time of injury job; clearly, that did not occur here because the record supports the finding that Claimant returned to the time-of-injury job. Therefore, he is not afforded the presumption discussed in *Teledyne.* Further, because Claimant has not shown that his layoff was caused by his work-related disability, as *Teledyne* also requires, the reinstatement petition was properly denied. *Folk,* 802 A.2d at 1280.

6. Board op. at 4 (December 10, 1997).

7. In this regard, Klarich testified as follows:

Q Would it be a fair statement that you performed the same job duties as you did on the day of 4–13–92?
A Basically, I tried to work around it.
. . . .
Q Between April and July 25, 1992, what, if anything, did you different [sic] in reference to performing your duties?
A I was doing what I could do, and that was the installation of the work—you know, product and fixtures.
Q Running wire?
A Oh, yes, and climbing scaffold, running pipe.
Q Did you continue to lift things?
A You see, it was either that or quit. I couldn't quit.
Q So you continued to lift things?
A I continue to work around that.
. . . .

Q Okay. Did you ever ask any of your foremen or any of your supervisors if you could do any light-duty work that didn't require lifting, bending, stooping?
A I kind of figured, I had fellows who worked for me that had disabilities in the past. It is something a fellow never asks, but yet when it becomes obvious, you do the right thing.
. . . .
Q So-
A Specifically, I do not recall although it would be pretty obvious I would say something.
Q For purposes of clarity, would it be fair to say that you basically continued to do most of your duties that you did prior to April 13th?
A Oh, I had to do that; I had to do most of my duties. But it was a different way of doing it.
. . . .
Q You started to work for Rite Way Electric on the 29th; is that correct?
. . . .
A Yes.
. . . .
Q Sir, would it be a fair statement that you weren't hired in a light-duty capacity; you were still required to do all the lifting and bending?
A Yes.
Q And you worked until September of 1992; is that correct?
A Yes.
. . . .
Q If you weren't laid off, you would have continued working?
A I would hope so.
Q Then you did work again for—
A RACS for that one week. That was Rite Way Electric. It was a one-week period.
Q In the same capacity, again; same duties?

we were to treat this as a claim for reinstatement of suspended benefits, Klarich, like the claimant in *Folk,* would not be entitled to a presumption that his loss of earnings is causally connected to his work injury.

Accordingly, because Klarich failed to prove that his physical restrictions, as opposed to economic reasons, led to his furloughs, the Board did not err in affirming the WCJ's decision to deny him benefits for wage loss. We affirm the Board's order.

### ORDER

AND NOW, this 21st day of March, 2003, the order of the Workers' Compensation Appeal Board, dated March 27, 2002, in the above-captioned matter is hereby AFFIRMED.

A Installation of the material.

Q Installation of the electrical material, electrical construction. How would you describe that? Would you describe that as a heavy job?

A Construction work. It can be very difficult. I would say heavy. Some days you may find something light, but-

. . . .

Q And again you returned with Rite Way Electric in January of 1993?

Q And in the same capacity?

A Yes, installation worker.

Notes of Testimony, Hearing of August 30, 1993, at 16, 18–23.