**TREVDAN BUILDING SUPPLY and Compservices, Inc., Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (POPE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 29, 2010.

Decided Dec. 13, 2010.

James A. Tinnyo, Harrisburg, for Petitioners.

Ronald J. Mishkin, Stroudsburg, for Respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Trevdan Building Supply and Compservices, Inc. (collectively, Employer) petition this Court for review of the July 23, 2010 order issued by the Workers' Compensation Appeal Board (Board) reversing the decision of the Workers' Compensation Judge (WCJ) granting the reinstatement petition of Brian Pope (Claimant) for the period March 21, 2007 through September 30, 2007, for partial benefits, and suspending such benefits effective October 1, 2007. The issues presented for this Court's review are: (1) whether the Board erred by reversing the WCJ's determination that Claimant was released without restriction to return to his pre-injury job and, his loss of earnings as of October 1, 2007, was due to economic factors; and, (2) whether the Board erred by awarding Claimant ongoing benefits when his benefits and wages combined would exceed the current wages of his co-workers in violation of Section 306(b)(1) of the Workers' Compensation Act (Act).[1] For the following reasons, we reverse the decision of the Board.

On October 26, 2006, Claimant sustained a rupture of his left biceps tendon in the course and scope of his employment as a yardman loading and unloading sheetrock and similar building materials for delivery by Employer. Employer issued a notice of compensation payable and Claimant began receiving weekly benefits in the amount of $607.29, based on his average weekly wage of $910.93. Claimant returned to work without restriction on March 20, 2007, at which time his benefits were suspended. On November 30, 2007, Claimant filed a reinstatement petition seeking partial benefits as of March 20, 2007 on the basis that his work injury caused a decrease in his earning power. Employer answered the petition, denying that Claimant's injury caused his decreased earning power. A hearing was held before a WCJ.

The undisputed evidence presented before the WCJ reflects that, after his injury, Claimant underwent surgery and therapy, and despite some residual discomfort, returned to work without restrictions. On March 19, 2007, he was released by his orthopedic surgeon, Brian A. Powers, M.D., to return to his job on a trial basis. Thereafter, on April 16, 2007, Dr. Powers noted that Claimant "[m]ay continue at work no restrictions." Reproduced Record (R.R.) at 39a–40a, 179a. His family physician, Ian S. Foster, M.D., on October 1, 2007, likewise deemed Claimant fit to return to full duty, but indicated that "[a]ccommodations may need to be made if his arm fatigues or becomes painful after repetitive use. I have discussed with him that lifting > 50 pounds will not be good for his arm at this time. That may improve with time however." R.R. at 43a, 93a. As a result, he occasionally requires assistance to perform some of his job duties. There were times, however, before his work injury that Claimant needed as-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(1).

sistance with his job duties. The WCJ deemed this evidence credible.

Also before the WCJ was unrefuted evidence that, prior to his injury, Claimant worked from 4:00 a.m. to 2:30 p.m., and other overtime hours were available to him. Upon his return to work, he asked to be returned to the earlier shift in order to accommodate his wife's work schedule. He was told by Employer's yard manager, Walter Dill, however, that overtime was no longer available as of September of 2007 due to a downturn in the economy that required a restructuring of Employer's workforce. Mr. Dill testified that the employees who thereafter received overtime were either the truck drivers or yardmen on the later shifts who receive the trucks, since they are at the mercy of traffic, construction site and other conditions over which Employer has no control. Mr. Dill stated that, even if he were authorized to allow Claimant to start work earlier, Claimant would be working alone, and he was concerned about Claimant re-injuring his arm under those conditions. Claimant returned to work at his pre-injury hourly wage but, because he did not work overtime, his salary was only $700.00 per week. The WCJ also deemed this evidence credible.

■ On October 31, 2008, the WCJ issued an order granting Claimant's reinstatement petition and awarding him partial benefits for the period between March 21, 2007 and September 30, 2007, but suspending such benefits effective October 1, 2007, on the basis that there was a reduction in overtime for all of Employer's workers. Claimant appealed to the Board,

arguing that his benefits should not have been suspended as of October 1, 2007. By decision mailed July 23, 2010, the Board reversed the WCJ's suspension of Claimant's benefits as of October 1, 2007. Employer filed an appeal with this Court.[2]

On appeal, Employer first argues that the Board erred by continuing Claimant's partial disability benefits on or after October 1, 2007, since Claimant returned to work without restriction, and there was a subsequent reduction of overtime for all workers. We agree. Because Claimant's loss of earnings on or after October 1, 2007 was not due to his work injury, the WCJ properly suspended Claimant's benefits.

■ Initially, we note:

A suspension is warranted under the Workers' Compensation Act where a claimant has a residual physical impairment attributable to a work-related injury but is receiving wages equal to or in excess of what the claimant had earned in his pre-injury job. Although the employer remains liable for the consequences of the work-related injury, there is no longer any 'disability,' i.e., loss of earning power, attributable to the work-related injury.

*McKay v. Workmen's Comp. Appeal Bd. (Osmolinski)*, 688 A.2d 259, 261 (Pa. Cmwlth.1997) (citation omitted). Reinstatement of suspended benefits is addressed by Section 413(a) of the Act which states, in pertinent part:

A workers' compensation judge designated by the department may, at any time ... reinstate ... a notice of com-

---

**2.** "This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed." *World Kitchen, Inc.*

*v. Workers' Comp. Appeal Bd. (Rideout)*, 981 A.2d 342, 346 n. 5 (Pa.Cmwlth.2009). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 n. 4 (Pa.Cmwlth.2008).

pensation payable ... upon proof that the disability of an injured employe has increased [or] recurred.... Such ... reinstatement ... shall be made as of the date upon which it is shown that the disability of the injured employe has increased [or] recurred.... [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury[,] payments ... may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772. The Pennsylvania Supreme Court has long held:

> [B]ecause of the nature of a suspension of benefits for a work-related injury, there exists a reduced burden of proof as to causation where a claimant petitions for reinstatement of such benefits.... [B]ecause the claimant had already established a work-related injury supporting an award of benefits, when seeking reinstatement of those benefits causation will be presumed if the claimant can demonstrate that: (1) through no fault of his own, his earning power is once again adversely affected by his disability; and (2) the disability which gave rise to his original claim, in fact, continues.

*Latta v. Workmen's Comp. Appeal Bd. (Latrobe Die Casting Co.)*, 537 Pa. 223, 226, 642 A.2d 1083, 1084 (1994) (citing *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990)). The Pennsylvania Supreme Court very recently removed the "through no fault of his own"

construct from its analysis and clarified that the employer may rebut the claimant's evidence in suspended benefits reinstatement cases under Section 413(a) "by showing ... some circumstance barring receipt of benefits that is specifically described under provisions of the Act or in this Court's decisional law." *Bufford v. Workers' Comp. Appeal Bd. (N. Am.Telecom)*, —— Pa. ——, 2 A.3d 548, 558 (2010).

■■■■ Pennsylvania decisional law reflects:

> [W]here a claimant returns to work under a suspension, without restriction, to his or her pre-injury job, is subsequently laid off, and then petitions for reinstatement, the claimant has the burden to affirmatively establish that it is the work-related injury which is causing his or her present loss of earnings. That is, while the claimant still enjoys the presumption that some work-related medical injury continues, the claimant is not entitled to the presumption that his or her present disability, i.e., loss of earnings, is causally related to that work injury....

*Klarich v. Workers' Comp. Appeal Bd. (RAC's Ass'n)*, 819 A.2d 626, 629 (Pa. Cmwlth.2003)[3] (quoting *McKay*, 688 A.2d at 262 (footnote omitted)). Even claimants who return to their time-of-injury jobs with restrictions that do not require a modification of their duties are considered "without restriction," and must prove their work injury has caused their loss of earnings. *Folk v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 802 A.2d 1277 (Pa.Cmwlth. 2002). Where a claimant's wage loss is attributable to economic factors as op-

---

**3.** We recognize that *Klarich* involved a claim petition rather than a petition for reinstatement of suspended benefits. In its analysis of *Klarich*, however, this Court used reinstatement principles, since "the core analysis would not differ...." *Klarich*, 819 A.2d at

629. Moreover, while we acknowledge that this case involves a loss of overtime hours due to economic circumstances, rather than the more severe consequence of a lay-off, this Court's reasoning in *Klarich* is instructive.

posed to the work injury, the claimant is not entitled to wage loss benefits. *Klarich; Folk.*

■ In this instant case, in order to have his suspended benefits reinstated, Claimant had to prove that his earning power was again adversely affected by the injury that formed the basis of his original claim. With sufficient evidence to prove that Claimant's loss of earnings was attributable to something other than his work injury, such as economic circumstances, Claimant's reinstatement may be denied. The Board stated that "the parties' evidence was susceptible to multiple inferences as to whether Claimant returned to his regular job and the reason for his loss of income." Board Op. at 8. We disagree. The WCJ found as a matter of fact that Claimant returned to work without specific restrictions, despite "medical cautions expressed by Dr. Foster with regard to Claimant's lifting activities." WCJ Opn. at 9, FOF # 9d. Even if we were to consider Dr. Foster's warning of Claimant's potential need for "accommodations" as imposing a restriction, Claimant's representations that he sometimes relies on his co-workers for help if needed does not constitute a modification of his job because he did that prior to his injury.

Moreover, the only overtime hours Claimant could work were before 6:00 a.m., when no one else is in the warehouse. Mr. Dill was hesitant to allow Claimant to work alone in light of Claimant's injury and his residual discomfort. Thus, before September 30, 2007, overtime hours were denied Claimant due to his work injury. In September of 2007, however, it is undisputed that the effect of a downturn in the economy on Employer required a restructuring of its workforce, and an elimination of overtime for all employees where possible. Accordingly, Claimant's lack of overtime hours after October 1, 2007 was not due to his injury, but due to Employer's economic circumstances.

Finally, in support of its reversal of the WCJ's decision, the Board cited *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996). In *Harper & Collins*, claimant received total disability benefits following a work injury that left her incapable of performing her pre-injury job duties. The employer offered her a light-duty position and, by agreement, her benefits were suspended. Because her pre-injury average weekly wage included overtime which was later discontinued for all employees, her average weekly wage upon her return to work was lower. The Pennsylvania Supreme Court held that "[b]ecause Appellee remains unable to return to her pre-injury position, continues to suffer residual impairment from her work injury, and is earning less than her pre-injury average weekly wage, she is entitled to partial disability benefits...." *Id.*, 543 Pa. at 493, 672 A.2d at 1323. However, in *Capper v. Workers' Compensation Appeal Board (ABF Freight Sys., Inc.)*, 826 A.2d 46 (Pa. Cmwlth.2003), this Court noted that *Harper & Collins* was decided "in the context of an employee who was reassigned to a light-duty position." *Id.*, 826 A.2d at 51. This Court further stated:

> The issue of whether an employee who returns to his original position, full-time, with no restrictions, is entitled to receive workers' compensation benefits at a higher rate because overtime was available at the time of his injury, but not at the time of his return to work, has yet to be determined by the Pennsylvania Supreme Court.

*Id.* It is clear, therefore, that *Harper & Collins* is not controlling here. In fact, we have discovered no cases since Capper that are on all fours with the case now before us.

[I]n performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party who prevailed before the fact-finder. Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the fact-finder's decision in favor of that prevailing party.

*WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 (Pa.Cmwlth. 2008) (citation omitted). There was substantial evidence to support the WCJ's findings that Claimant met his burden of proving that his earning power was adversely affected by his work injury, and that such disability was the result of his original claim, but only for the period from March 21, 2007 through September 30, 2007. Moreover, Employer credibly demonstrated that Claimant's loss in earnings as of October 1, 2007 was not caused by disability arising from the work-related injury, but by economic circumstances and, therefore, met its burden of proof. We hold, therefore, that the Board erred by reversing the WCJ and continuing Claimant's partial disability benefits after October 1, 2007 under circumstances in which Claimant returned to work without restriction, and there was a subsequent reduction of overtime for all workers.[4] Accordingly, the Board's order is reversed.

## ORDER

AND NOW, this 13th day of December, 2010, the July 23, 2010 order of the Workers' Compensation Appeal Board is reversed.

---

4. In light of our reversal of the Board's order, Employer's argument that the Board violated Section 306(b)(1) of the Act by reversing the suspension of Claimant's benefits is moot and will not be addressed at this time.