IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Mecca,                              :
                    Petitioner             :
                                           :
          v.                               :  No. 132 C.D. 2015
                                           :  Submitted:  June 12, 2015
Workers' Compensation Appeal               :
Board (Procura Management, Inc.            :
and Zenith Insurance),                     :
                    Respondents            :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: September 23, 2015


          Charles Mecca (Claimant) petitions for review of an adjudication of
the Workers' Compensation Appeal Board (Board) that affirmed the Workers'
Compensation Judge's (WCJ) denial of his claim for a disabling work injury.  In
doing so, the Board determined that Claimant failed to prove he sustained a work
injury that resulted in a loss of earning power.  Discerning no error, we affirm.

          Claimant worked for Procura Management, Inc. (Employer) for 11
years as a vocational case manager.  On February 25, 2011, Claimant injured his
back as he bent down to retrieve a case file from his vehicle and reported the injury
to Employer.  On March 8, 2011, Employer issued a medical only notice of
compensation payable (NCP) describing the injury as a "Back Strain/Sprain."

Reproduced Record at 32 (R.R. ___). Claimant continued working his regular job until he was laid off on August 23, 2012.

In September 2012, Claimant reported to Employer that the February 25, 2011, incident caused a disabling head and back injury. On September 20, 2012, Employer issued a notice of compensation denial (NCD) stating that Claimant reported an injury to his back and head described as "[p]ain, confusion/amnesia," and declining to pay benefits because Claimant "did not suffer a work-related injury." R.R. 35.

On October 24, 2012, Claimant filed a claim petition alleging that he had sustained a low back compression fracture and injuries to his head, left shoulder and arm in the February 25, 2011, incident. Claimant sought total disability benefits as of August 24, 2012. Employer filed an answer denying the allegation that Claimant had suffered a work injury to his head or shoulder and asserting that the acknowledged work injury did not cause a wage loss; Claimant was laid off for economic reasons.

The petition was assigned to a WCJ, who held a hearing. Both Claimant and Employer attended and presented evidence.

Claimant testified in support of his claim. As a full-time vocational case manager, Claimant reviewed the files of injured workers, met with them and their attorneys for vocational interviews, did labor market surveys, helped with job placements, and occasionally testified as a vocational witness. Claimant worked from his home in Scranton. Claimant testified that a case file weighed between 20 and 25 pounds, which he had to carry with him for meetings and hearing appearances.

On February 25, 2011, Claimant drove to York, Pennsylvania to meet with an injured worker and his attorney. Claimant got out of his car and bent down to retrieve the case file from the passenger seat. Claimant testified that when he did so, he felt pain in his back and left leg that was so intense it caused him to jerk backwards and hit his back and head on the car door. Claimant was unsure whether he had also hurt his left shoulder in the incident. Claimant proceeded with the appointment and drove himself home. He then e-mailed Hally Ley in Employer's human resources department, informing her of the incident and the pain in his back and leg.

On March 10, 2011, Claimant sought medical treatment from his long-time family doctor, Dr. Anthony Perry. Claimant testified that he described the February incident to Dr. Perry and reported constant back and leg pain and an episode of confusion. Claimant could not explain why Dr. Perry's March 10, 2011, office notes documented thoracic and chest pain but nothing about low back or leg pain or a head injury. Nor could Claimant explain why Dr. Perry's notes did not document any complaint of confusion until September 1, 2011. Claimant testified that he saw Dr. Perry many times for his back and leg pain between March 10, 2011, and September 6, 2012. The first record of low back and leg pain in Dr. Perry's notes was September 6, 2012; Claimant denied that this was the first time he made these complaints to Dr. Perry.

Claimant continued to work, in spite of his physical complaints. Because he could no longer carry the case files, Claimant had to summarize files. During his drives to meetings, he had to stop to walk around and relieve his pain. Claimant had to reschedule some meetings because of his pain.

3

In August 2012, Employer assigned Claimant to cover nursing appointments in Philadelphia. On August 23, 2012, after four days of this new assignment, Claimant was laid off. Claimant disputed Employer's stated reason for laying him off, *i.e.*, lack of work. Claimant stated that Employer did not lay off any other vocational employees in August 2012 and hired 11 new employees the same week Claimant was laid off.

Claimant testified that he still suffers pain in his back that extends down his left leg. This pain has limited his ability to perform his job as a vocational case manager. Claimant acknowledged that Dr. Perry did not impose any job restrictions until September 21, 2012, when, at Claimant's request, Dr. Perry gave him a note restricting him from driving. Claimant has not worked anywhere since being laid off.

Claimant presented the medical deposition of Joseph J. Chun, D.O., who is board certified in pain and rehabilitation medicine. Dr. Chun began treating Claimant on October 17, 2012, for the injuries sustained in the February 25, 2011, incident. Dr. Chun's physical examination revealed pain and restricted range of motion of the lumbosacral spine, ankle weakness and a left shoulder impingement. A lumbar MRI from October 11, 2012, showed a small central disc herniation and annular tear at L4-5. Dr. Chun ordered an EMG and nerve conduction study that, in his opinion, showed left lumbar radiculopathy. The MRI also showed a mild non-acute compression fracture at L3, which Dr. Chun testified was not work-related.

Based on Claimant's history, the physical examination and the radiographic test results, Dr. Chun diagnosed Claimant's work injuries as an L4-5 disc herniation and tear causing lumbar radiculitis, left shoulder rotator cuff

4

syndrome and tendinitis, and post-concussive syndrome with occasional confusion status post head trauma.[1] Dr. Chun opined that these injuries were caused by Claimant's February 2011 work injury because that is when Claimant began to experience symptoms; Dr. Chun assumed that the history provided to him by Claimant was accurate. Dr. Chun opined that Claimant's work injuries limited him to a light-duty position, such as vocational counselor, so long as he did not move case files.

Aside from one note dated September 21, 2012, Dr. Chun did not have any other records from Claimant's original treating physician, Dr. Perry. When presented with Dr. Perry's records during the deposition, Dr. Chun acknowledged that they did not mention back and leg pain until September 6, 2012, after Claimant had been laid off. None referred to a head or left shoulder injury.

Employer submitted the medical deposition of Robert M. Mauthe, M.D., who is board certified in physical medicine and rehabilitation and did an independent medical examination of Claimant on February 5, 2013. The physical examination was normal except for adhesive capsulitis in the left shoulder, which Dr. Mauthe did not link to a work injury because Claimant did not tell him he injured his shoulder at work. Dr. Mauthe reviewed Dr. Perry's medical records, which reported chest and thoracic pain but not low back, head or shoulder pain on March 10, 2011. Dr. Perry ordered medical tests that showed spinal degeneration and osteoporosis. Dr. Mauthe reviewed the October 11, 2012, lumbar MRI and opined that Claimant has degenerative changes at every level but no traumatic disc

---

[1] Dr. Chun testified that he never assessed Claimant's mental status because he was not treating him for a head injury.

herniation or annular tear. Dr. Mauthe also reviewed the EMG and testified that it does not show a radiculopathy. Having found no signs of an injury other than an upper back strain which had resolved, Dr. Mauthe opined that Claimant needed no work restrictions.

Employer presented the deposition testimony of Lisa Zecca, who oversees Employer's vocational work in Pennsylvania and other states. Zecca hired Claimant in 2001 and was his direct supervisor. She gave Claimant good performance evaluations and considered him a valuable employee. In early 2011, Employer had one part-time and three full-time vocational case managers, including Claimant. Zecca testified that between April 2011 and August 2012, Employer's vocational referrals dropped by 40 to 50 percent. Because Claimant's case file count was so low, Zecca assigned him to Employer's medical case management department in Philadelphia in late June 2012. In August 2012, Employer was forced to lay off Claimant and the part-time case manager because of dwindling business. Employer again reduced staff in March 2013, both vocational case managers and administrative personnel. Zecca disputed Claimant's allegation that 11 new employees were hired before his layoff. Employer has not hired any new employees in the vocational department, except for one part-time employee in Ohio.

Zecca did not know that Employer had issued a medical only NCP for a February 2011 injury. Zecca testified that Claimant never asked for a restricted job or presented a medical note for such a restriction. Zecca testified that the decision to lay off Claimant was due to lack of available work.

Employer presented the deposition testimony of Mary-Elizabeth McDade, Employer's vice president of case management and Zecca's supervisor.

6

McDade, who was involved in the decision to lay off Claimant, confirmed that it was because Employer's vocational business was declining. McDade did not know that Claimant had a work injury and, thus, it played no role in the decision to lay off Claimant. McDade acknowledged that Claimant had mentioned to her in a February 26, 2011, e-mail that he had hurt his back, but he did not tell her it was work-related.

Finally, Employer presented the deposition testimony of Jennifer Hinkel, who works in human resources and confirmed that Claimant was laid off due to lack of work. At the time of Claimant's work injury, Hally Ley handled work injury claims, but she left the company in the spring of 2012. When he learned of his impending layoff, Claimant forwarded Hinkel several e-mails between himself and Ley from February through April 2011.[2] In the e-mails, Claimant described the February 2011 incident; stated that his doctor had ordered x-rays and a bone density scan; and asked what he should do about his medical expenses. On August 16, 2012, Claimant e-mailed Hinkel asking about his medical bills, and Hinkel provided the name of Employer's workers' compensation carrier. Hinkel testified that Claimant had never raised his need for medical treatment or a work restriction before learning that he would be laid off.

The WCJ rejected the testimony of Claimant and Dr. Chun and credited the testimony of Dr. Mauthe, Zecca, McDade and Hinkel.[3] The WCJ found that Claimant's work-related back strain did not cause a wage loss. Dr.

---

[2] Claimant attached the e-mails between Ley and himself to Hinkel's deposition.

[3] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

7

Perry's notes did not record an injury to Claimant's head, left shoulder or low back, or radicular leg pain. The credible testimony of Zecca, McDade and Hinkel established that Claimant was laid off because of a downturn in Employer's business. Based on these facts, the WCJ concluded that Claimant failed to prove that he sustained a disabling work injury on February 25, 2011, and denied the claim petition. Claimant appealed, and the Board affirmed. Claimant then petitioned for this Court's review.[4]

On appeal, Claimant argues that his claim petition should have been granted because the record established a loss of earning power caused by the work injury. In holding otherwise, the WCJ did not issue a reasoned decision. Specifically, Claimant contends that the WCJ failed to consider the fact that Employer had accepted Claimant's work injury in the NCP and did not explain why Dr. Perry's hearsay medical records were admitted into evidence over Claimant's objection.[5]

We begin with a review of the applicable law. Section 406.1 of the Workers' Compensation Act[6] (Act) requires an employer to either accept liability

---

[4] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[5] Employer argues that Claimant has waived the argument about Dr. Perry's records because he did not raise that issue in his appeal to the Board. Claimant's argument about Dr. Perry's records is being raised in the context of his reasoned decision argument, and he did raise the issue of a reasoned decision before the Board. Therefore, we will address the argument about Dr. Perry's records.

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §717.1. Section 406.1 was added by the Act of February 8, 1972, P.L. 25. It states, in relevant part, as follows:

(a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of

**(Footnote continued on the next page . . .)**

8

or issue a denial within 21 days of receiving notice of an injury. 77 P.S. §717.1. The employer has the option of issuing a medical only NCP, by which it acknowledges a work injury and agrees to pay for medical expenses but does not accept liability for or agree to pay any wage loss benefits for disability. *Armstrong v. Workers' Compensation Appeal Board (Haines & Kibblehouse, Inc.)*, 931 A.2d 827, 831-32 (Pa. Cmwlth. 2007). A claimant who believes that the work injury is also causing a loss of earning power has the burden of filing a claim petition and proving his case. *Orenich v. Workers' Compensation Appeal Board (Geisinger Wyoming Valley Medical Center)*, 863 A.2d 165, 170 (Pa. Cmwlth. 2004).

In a claim petition, the claimant has the burden of proving all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must prove through unequivocal medical testimony that he sustained a work injury which resulted in disability, *i.e.*, a loss of earning power. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corp. Maple Creek Mine)*, 626 A.2d 1144, 1146 (Pa. 1993). A claimant who continues to perform his regular job after the injury and is later laid off for economic reasons is not entitled to disability

---

**(continued . . . )**

> compensation due either pursuant to an agreement … or a notice of compensation payable … or pursuant to a notice of temporary compensation payable….
>
> ***
>
> (c) If the insurer controverts the right to compensation it shall promptly notify the employe or his dependent, on a form prescribed by the department, stating the grounds upon which the right to compensation is controverted and shall forthwith furnish a copy or copies to the department.

77 P.S. §717.1.

9

benefits. *Klarich v. Workers' Compensation Appeal Board (RAC's Association)*, 819 A.2d 626, 628 (Pa. Cmwlth. 2003).

Section 422(a) of the Act requires the WCJ to issue a reasoned decision "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. §834.[7] The WCJ must give reasons for accepting or rejecting evidence. *Id.* The WCJ has a duty to "make crucial findings of fact on all essential issues necessary for review by the Board and this Court," but is not required to address specifically each bit of evidence offered. *Pistella v. Workmen's Compensation Appeal Board (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993). A decision is reasoned for purposes of Section 422(a) if it allows for adequate appellate review. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

Here, Employer issued a medical only NCP acknowledging that Claimant had sustained a work injury on February 25, 2011. The centerpiece to

---

[7] Section 422(a) states in relevant part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

Claimant's appeal is that this NCP entitled him to disability benefits after Employer laid him off.

Claimant cites several shortcomings in the WCJ's decision. First, the WCJ failed to acknowledge the acceptance of the work injury in the NCP. Second, the WCJ did not explain why he credited the testimony of McDade, who admitted that she received Claimant's February 26, 2011, e-mail that reported a back injury but then denied knowing Claimant had a work injury until August 2012. Third, the WCJ's acceptance of Hinkel's testimony is inexplicable because she acknowledged knowing that Claimant had sustained a work injury before his layoff. Fourth, the WCJ failed to explain why, despite its issuance of a medical only NCP, Employer was allowed to issue an NCD denying that a work injury occurred on February 25, 2011, and stating that the alleged disability was first reported on September 6, 2012. Fifth, the WCJ did not explain why he credited the testimony of McDade and Hinkel when the documents Employer filed with the Bureau contradict their testimony. Claimant posits that if the WCJ had not "ignored this most important evidence without explanation," the WCJ would have found that Claimant is entitled to wage loss benefits. Claimant's Brief at 23. Finally, Claimant argues that the WCJ failed to explain why he admitted Dr. Perry's records into evidence over Claimant's objection.

We conclude that the WCJ issued a reasoned opinion. Contrary to Claimant's assertion, the WCJ did acknowledge that Employer issued an NCP as a result of the February 25, 2011, work injury, for a "back strain/sprain." WCJ Decision, October 30, 2013, at 1; Finding of Fact No. 2. The WCJ also found that Claimant "never had any disability attaching to him due to the same." *Id.* at 10; Finding of Fact No. 27. These findings are supported by the evidence showing that

11

Claimant had no medical restrictions, did not request them of Employer and was able to perform his pre-injury job without a wage loss up until being laid off.

Claimant overstates the significance of the medical only NCP. It simply acknowledged a non-disabling strain/sprain. After he was laid off, Claimant alleged *additional* disabling work injuries arising from the February 25, 2011, incident. The NCD stated that Employer denied that Claimant's alleged disabling head and back injuries resulted from a work injury. The WCJ was not required to discuss further the NCD because it did not conflict with the NCP.[8] Claimant had the burden of proving a disabling work injury through competent medical evidence, on which the WCJ focused.

The WCJ's treatment of the testimony of McDade and Hinkel is likewise reasoned. The WCJ summarized both Hinkel's and McDade's testimony. Both knew of the February 26, 2011, back injury. It was unnecessary for the WCJ to discuss their testimony in relation to the contents of the NCD because the NCD concerned other alleged injuries. Their testimony did not conflict with the NCD or the NCP. Their testimony addressed whether Claimant had work restrictions and why he was laid off. The WCJ thoroughly discussed and considered their testimony on these issues.

Finally, the WCJ's decision is reasoned with respect to Dr. Perry's records.[9] Dr. Perry's medical records, which were attached to the deposition of Dr.

---

[8] For the sake of complete accuracy, Employer should have stated that a back sprain/strain had occurred on February 25, 2011, rather than stating that no injury occurred. However, it is of no moment because the sprain/strain was not at issue in the claim petition.

[9] Although the rules of evidence are relaxed in administrative proceedings, hearsay evidence, when properly objected to, cannot support a finding and will be excluded from the record. *Steinhouse v. Workers' Compensation Appeal Board (A.P. Green Services)*, 783 A.2d 352, 357 n.4 (Pa. Cmwlth. 2001). However, there are exceptions to the hearsay rule. Dr. Perry's medical **(Footnote continued on the next page . . .)**

Mauthe, were admitted. Claimant was questioned about the contents of Dr. Perry's medical records and did not object to these questions. Dr. Chun and Dr. Mauthe also testified about Dr. Perry's records. Employer used Dr. Perry's records to impeach Dr. Chun, whose opinion admittedly depended on the accuracy of the history Claimant gave him. *Huff v. Workmen's Compensation Appeal Board (Ingalls Steel of Pennsylvania)*, 453 A.2d 753, 755 (Pa. Cmwlth. 1982). Dr. Mauthe relied upon Dr. Perry's medical records in formulating his own medical opinion that the only injury Claimant sustained on February 25, 2011, was a non-disabling back strain/sprain. A medical expert is permitted to base his opinion on the contents of medical reports of other doctors, which the expert customarily relies upon in the practice of his profession. *Commonwealth v. Thomas*, 282 A.2d 693, 698-99 (Pa. 1971).

In short, the WCJ's decision was reasoned. The WCJ made findings of fact and conclusions of law necessary to address the issues presented by Claimant's petition. Notwithstanding the medical only NCP, Claimant had the burden of proving that he sustained a disabling work injury on February 25, 2011. It is undisputed that Claimant continued working without medical restrictions or a wage loss until he was laid off on August 23, 2012. The WCJ accepted the testimony of Dr. Mauthe that Claimant's work injury was a strain that had resolved. The WCJ accepted the testimony of Employer's fact witnesses that

---

**(continued . . . )**

records were not admitted for the truth of their diagnoses. Rather, they were considered as evidence relevant to what Claimant reported to Dr. Perry. *Mithani v. Workers' Compensation Appeal Board (Mt. Airy Lodge)*, 730 A.2d 566, 568-69 (Pa. Cmwlth. 1999). Further, under the Act, Dr. Mauthe is expressly authorized to review Claimant's medical records as part of his IME. *Id.* at 569.

Claimant did his regular job until he was laid off because of a decline in Employer's business.[10]  Given these findings of fact, the WCJ properly denied the claim petition.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

---

[10] This Court may not disturb those determinations because the WCJ is the ultimate fact finder and has complete authority over questions of credibility. *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Mecca, :
            Petitioner :
            :
          v. :
            : No. 132 C.D. 2015
Workers' Compensation Appeal :
Board (Procura Management, Inc. :
and Zenith Insurance), :
            Respondents :

## ORDER

AND NOW, this 23rd day of September, 2015, the order of the Workers' Compensation Appeal Board dated January 6, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge