**Judith A. LAKOMY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DEPARTMENT OF ENVIRONMENTAL RESOURCES and PIMCO), Respondents,**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 25, 1998.
Decided Nov. 10, 1998.

Larry D. Wohnhas, Pittsburgh, for petitioner.

James B. Hudzik, Pittsburgh, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Judith A. Lakomy (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) denying her penalty petition under Section 430 of the Workers' Compensation Act (Act) [1] because Employer failed to

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 971. Section 430(b) of the Act provides, in pertinent part:

   Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a peti-

   tion and being granted a supersedeas shall be subject to a penalty as provided in Section 435. Section 435 of the Act, 77 P.S. § 991(d)(i), provides:

   The department, the board, or any court which may hear proceedings brought under this act shall have the power to impose penalties as

timely pay back compensation benefits as ordered by the Board.

Claimant injured her lower back on March 19, 1987, while in the course of her employment with the Pennsylvania Department of Environmental Resources (Employer). Employer paid Claimant benefits until she returned to work on April 27, 1987, and, ultimately, signed a final receipt.[2] One week after her return to work, Claimant resigned her position with Employer to work for the National Parks Service. However, because of the seasonal nature of her job with the National Parks Service, she was laid off from that position and began working other seasonal jobs at a weekly wage lower than the one she earned with Employer. On October 24, 1988, Claimant filed another claim petition alleging that her work injury continued.

Because Claimant had signed a final receipt, the Referee treated the "claim petition" as a petition to set aside a final receipt. Based on the evidence presented at the hearing, the Referee set aside the final receipt because Claimant was not fully recovered when she signed the final receipt but immediately suspended benefits because any loss of earnings she incurred was the result of her voluntary resignation of her position with Employer. Claimant then appealed the suspension to the Board which reversed because the medical evidence did not support that she was disabled at the time she signed the final receipt, but instead, showed that her disability recurred after the final receipt was executed. Treating her petition as one for a reinstatement of benefits, the Board ordered that total benefits be reinstated as of May 31, 1988. Both Claimant and Employer appealed to this Court.[3]

While the appeal was pending in this Court, Employer petitioned both the Board and this Court for a supersedeas but both requests were denied.[4] Even though its supersedeas had been denied, Employer failed to pay Claimant her back benefits as ordered. Instead, it attempted to negotiate with Claimant's counsel to obtain a credit for Claimant's wages earned during the period that the Board awarded total disability benefits. However, Claimant's counsel refused to negotiate a credit and insisted that Claimant be paid at the total disability rate. Consequently, in September 1994, seven months after this Court denied Employer's request for supersedeas and almost one year after the Board ordered a reinstatement of Claimant's benefits, Employer's insurance company paid Claimant a lump sum of $80,000 which included Claimant's total disability benefits and attorney's fees plus interest.

On January 19, 1995, Employer filed a petition for modification of Claimant's benefits requesting a reduction from total to partial disability based on Claimant's earnings from other employment. Claimant then filed a penalty petition seeking a 20% penalty[5] for Employer's failure to pay benefits within 30 days as required. In support of its modification petition, Employer introduced Claimant's deposition testimony that she was working full-time, as well as evidence of Claimant's current earnings. In opposing the penalty petition, Employer also introduced Claimant's tax returns from 1987 to 1984, along with other documents indicating that she had income during the period she was receiving total disability benefits from Employer.

---

provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
  (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, that such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalties shall be payable to the same persons to whom the compensation is payable."

2. Claimant did not execute a final receipt until November 25, 1987.

3. Apparently not raised was the issue of whether Claimant's benefits should cease because she voluntarily quit her job with Employer.

4. Ultimately, we affirmed, holding that the Board was correct in treating Claimant's petition as one for reinstatement and that medical evidence showed that Claimant was entitled to a reinstatement of benefits.

5. Prior to the 1996 amendments to the Act, Section 435(d)(i) only permitted a 20% maximum penalty.

Based on this evidence, the WCJ granted Employer's request to modify benefits but denied Claimant's request for penalties. She found that Claimant had failed to show that the Act was violated and, in any event, Claimant had been "overpaid" by more than $40,000 in benefits because of Claimant's earnings between November 1987 to September 1994 that were not credited against the total disability benefits that she was receiving.[6] As a result, the WCJ held that the penalty sought by Claimant was not warranted because any penalty for not paying back benefits promptly was more than mitigated by the overpayment of benefits. Not challenging the modification, Claimant appealed to the Board solely contending that the WCJ erred in not awarding penalties because Employer was barred from raising the issue of Claimant's employment subsequent to March 1, 1988. Agreeing with the WCJ, the Board affirmed and this appeal followed.[7]

■ Claimant contends that the WCJ abused her discretion in not awarding penalties because Employer's failure to timely pay benefits was a clear violation of the Act mandating the imposition of penalties. Employer did not commence payment until almost one year after the Board granted a reinstatement of benefits and almost six months after its request for supersedeas was denied. We agree with Claimant that the WCJ erred in not finding that a violation of the Act occurred because a violation of the Act occurs when an employer fails to make a payment within 30 days of the decision to grant benefits. *Cunningham v. Workmen's Compensation Appeal Board (Inglis House)*, 156 Pa.Cmwlth. 241, 627 A.2d 218 (Pa. Cmwlth.1993).

■ Even where, as here, a violation of the Act has occurred, that does not mean that an award of penalties is mandated. In

such circumstances, the imposition of a penalty is not required but is left to the sound discretion of the WCJ to determine if extenuating circumstances justify the violation. *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corp.)*, 676 A.2d 690 (Pa.Cmwlth.1996); *Ortiz v. Workmen's Compensation Appeal Board (Fair Tex Mills, Inc.)*, 102 Pa.Cmwlth. 493, 518 A.2d 1305 (Pa.Cmwlth.1986). Recognizing that payments are not mandated, Claimant contends that the WCJ abused her discretion in not imposing payments by finding that Claimant had been "overpayed" because her $40,000 in earnings was not credited against the amount of compensation she received. By adopting that view, Claimant contends that the WCJ is, in effect, attempting to go behind the original award to find that Employer's violation of the Act be excused.

■ In effect, what we are asked to consider is whether the WCJ can take into consideration the totality of circumstances existing in the case as a whole and apply "rough justice" in not awarding penalties or are the extenuating circumstances limited to only those circumstances that justify the violation? While applying "rough justice" is certainly an appealing concept, especially in cases such as the present one where, for whatever reason, Claimant was awarded, what appears, in hindsight, to be a substantial overpayment. Nonetheless, because that amount was awarded by the Board, in effect, it is not an overpayment but the true, correct and necessarily the proper amount and that amount cannot be collaterally attacked with newly introduced evidence.

■ As to what the WCJ can consider in determining whether penalties are appropriate, because Section 435 of the Act, 77 P.S. § 991, provides that penalties can only be imposed for violations of the provisions of

---

6. In arriving at that figure, the WCJ calculated Claimant's time of injury weekly wage at $279.83 which amounted to $14,551.16 yearly. This supported Claimant's weekly disability rate of $186.25 or $9,685 yearly. For each year from 1987 to 1996, the WCJ subtracted the amount indicated on Claimant's tax returns from $14,-551.16 and then multiplied the difference by 2/3, the partial disability rate, to arrive at the amount of overpayment for each year.

7. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings of fact were supported by substantial evidence. *Pokita v. Workmen's Compensation Appeal Board (U.S.Air)*, 163 Pa.Cmwlth. 97, 639 A.2d 1310 (Pa.Cmwlth.1994).

the Act, the corresponding rules and regulations or rules of procedure,[8] the WCJ can only consider extenuating circumstances that go to the violation and not some other factor or factors that are extraneous to the violation. For example, if an employer stopped payment without authority upon a good faith belief that claimant had returned to work without any loss of earnings, it was within the WCJ's discretion not to award penalties because the employer presented a type of extenuating circumstance pertinent to the violation. *Arnott v. Workmen's Compensation Appeal Board,* 156 Pa.Cmwlth. 167, 627 A.2d 808 (Pa.Cmwlth.1993), *petition for allowance of appeal denied,* 537 Pa. 624, 641 A.2d 589 (1994). However, if an employer stopped making compensation payments, the WCJ could not excuse the violation by going back and reexamining the evidence and finding that because it was a "close call" as to whether the injury was work-related, "rough justice" would not warrant the imposition of penalties.

Because the WCJ used as extenuating circumstance matters that were already litigated and not relevant to the violation, it was an abuse of discretion for her to use that as a basis to deny penalties. Accordingly, the Board's decision is reversed and the matter is remanded back as to the amount of penalty to be awarded.

### ORDER

AND NOW, this 10th day of November, 1998, the order of the Workers' Compensation Appeal Board at No. A96–3054, dated March 13, 1998, is reversed and the case is remanded to the Workers' Compensation Judge for calculation of penalty. Jurisdiction relinquished.

---

8. For penalties to be awarded, a violation of the Act or of the rules and regulations promulgated under the Act must appear on the record. *Moore, supra.*