# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cathy A. Haney,  :
                 Petitioner  :
                             :
            v.  : No. 963 C.D. 2018
                             : No. 964 C.D. 2018
Workers' Compensation Appeal Board  : Submitted: November 30, 2018
(Commonwealth of Pennsylvania,  :
Military and Veterans Affairs and  :
INSERVCO Insurance Services, Inc.),  :
                 Respondents  :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: April 25, 2019

         Cathy A. Haney (Claimant) petitions for review of two adjudications of the Workers' Compensation Appeal Board (Board)[1] that denied her request to expand her work injury to include a right hand tremor and denied her penalty petition. The Board imposed attorney fees against the Department of Military and Veterans Affairs (Employer) for an unreasonable contest but not in the amount requested by Claimant. In reaching these conclusions, the Board affirmed the decisions of the Workers' Compensation Judge (WCJ). Discerning no merit to Claimant's assignments of error, we affirm.

---

[1] The WCJ and the Board rendered identical opinions and orders at the agency docket numbers A17-0673 and A17-0668, against which Claimant filed petitions for review respectively at docket numbers 963 C.D. 2018 and 964 C.D. 2018. By an order dated October 26, 2018, this Court consolidated the two cases for consideration.

## Background

Claimant worked for Employer as a registered nurse. On November 3, 2001, Claimant sustained a work-related injury when a patient grabbed and twisted her right hand. Employer accepted Claimant's injury as a strain/sprain of the right hand. At the time she was injured, Claimant also worked for the UPMC Lee Regional Home Nursing program (UPMC Lee). She earned $486.21 per week with Employer, and $212.83 per week with UPMC Lee, for a combined average weekly wage of $699.04. Claimant was paid disability compensation in the amount of $466.03 per week. On March 18, 2002, Claimant returned to work at her pre-injury wage. However, her disability recurred on May 2, 2002, and she has collected full disability benefits since then.

On May 20, 2015, Employer filed a modification petition to revise Claimant's status from full to partial disability based upon an impairment rating evaluation (IRE) performed by Vinit Pande, M.D. Certified Record (C.R.), 963 C.D. 2018, Item No. 2. On July 23, 2015, Claimant filed a modification petition to expand her work injury to include a scapholunate ligamentous tear of the right wrist, insomnia, reflex sympathetic dystrophy/complex regional pain syndrome (RSD/CRPS) of the upper right arm, continuous tremors in the right hand, and a progression of symptoms to the right shoulder, neck, collarbone and right leg from the ankle to the knee. In her modification petition, Claimant asserted that Employer had failed to account for her concurrent employment at UPMC Lee when it calculated her partial disability benefits during her return to work for two months in 2002. *Id*. Employer denied all material allegations.

On November 21, 2015, Claimant filed a review petition to expand her work injury to include the diagnoses and symptoms listed in her modification

2

petition. In its answer, Employer admitted that the work injury should include a scapholunate ligamentous tear of the right wrist and RSD/CRPS of the upper right extremity.

The WCJ consolidated the petitions of Employer and Claimant. Both presented evidence.

Claimant testified that on November 3, 2001, she was working at a veterans' home when a resident grabbed her right arm causing "sharp pain shooting up [her] arm." Notes of Testimony (N.T.), 9/14/2015 at 22; Reproduced Record at 133a (R.R.__).[2] The pain started at her wrist and extended into her thumb.

Claimant was treated by several doctors, including Peter Ridella, M.D. He did surgery and put her right arm in a short-arm cast for ten weeks. When the cast was removed, Claimant noticed "blackening," "red and blue mottling of [her] right forearm and hand," and "coldness and tremor of [her] right hand." *Id.* at 25; R.R. 136a. Claimant underwent a course of acupuncture to relieve the symptoms. Claimant testified that she is right-hand dominant, and she had no injuries to her right hand, wrist, arm, shoulder, neck, right ankle, leg or knee prior to November 3, 2001.

Claimant testified that over the years her symptoms have "traveled" to her right shoulder, across her collarbone, and up the right side of her neck. *Id.* at 27; R.R. 138a. The symptoms then moved to her right leg from the ankle to the knee, causing pain when she walked. Claimant has difficulty sleeping and has experienced memory loss and confusion.

Claimant stated that she collected full disability benefits from November 4, 2001, through March 17, 2002, and from May 3, 2002, and ongoing.

---

[2] The Reproduced Record is filed at 963 C.D. 2018.

However, she received no compensation for the period from March 18, 2002, to May 2, 2002, when she returned to work with Employer. However, she did not return to work at UPMC Lee after the November 3, 2001, work injury.

Claimant underwent two independent medical examinations (IME). The first, on October 14, 2004, was done by Dr. Jeffrey Kann. The second on February 16, 2015, was done by Dr. Arnold Berman. Claimant stated that the tremors and the pain "got worse" after Dr. Berman's examination. *Id.* at 29; R.R. 140a.

In support of its modification petition, Employer submitted Dr. Pande's IRE report and his deposition testimony. Dr. Pande, who is board-certified in physical medicine and rehabilitation, performed the IRE on April 7, 2015, using the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (AMA Guides). He obtained a history of Claimant's work injury and subsequent treatment. He examined Claimant's upper right extremity and assessed her work-related injury as a right hand and wrist strain, right wrist scapholunate ligamentous tear, and RSD. Dr. Pande concluded that Claimant had a whole person impairment of 16 percent. Thereafter, Dr. Pande performed a supplemental rating under the Fourth Edition of the AMA Guides[3] and concluded that Claimant had a whole person impairment of 30 percent. Dr. Pande testified that

---

[3] In *Protz v. Workers' Compensation Appeal Board (Derry Area School District) (Protz I)*, 124 A.3d 406 (Pa. Cmwlth. 2015), this Court held that Section 306(a.2) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. §511.2, which required an IRE physician to determine a claimant's degree of impairment using the most recent version of the AMA Guides, was an unconstitutional delegation of legislative authority. As a result of the *Protz I* decision, Employer arranged for a supplemental IRE under the Fourth Edition of the AMA Guides. In 2017, in *Protz v. Workers' Compensation Appeal Board (Derry Area School District) (Protz II)*, 161 A.3d 827, 841 (Pa. 2017), the Pennsylvania Supreme Court affirmed this Court's determination that Section 306(a.2) was an unconstitutional delegation of legislative authority and struck down Section 306(a.2) in its entirety.

he was certified to perform impairment ratings under both the Sixth and Fourth Editions.

Dr. Pande testified that he examined only Claimant's right upper extremity to do his impairment evaluation. He did not consider Claimant's head, neck, right clavicle, or right shoulder, nor Claimant's sleep difficulties, tension headaches, or cognitive deficits. Dr. Pande stated that he "[was not] even deciding what is the entirety of the work injury. [He] was only asked to rate a specific area." N.T., 7/25/2016, at 79-80; R.R. 430a-31a.

Claimant submitted the medical records and deposition testimony of William DeMayo, M.D., who is board-certified in physical medicine and rehabilitation. Dr. DeMayo first examined Claimant on August 19, 2015, and diagnosed her with a sprain/strain of the right hand, a scapholunate ligamentous tear of the right wrist, RSD/CRPS, insomnia, myofascial neck pain, tension headaches, memory and cognitive dysfunction, and dizziness and balance problems. All of these, he opined, were related to Claimant's original work injury. Dr. DeMayo observed that Claimant had an "intermittent tremor in her right upper extremity" as well as "weakness distally in the right leg, although there is some question as to her effort with that exam." N.T., 12/30/2015, at 24; R.R. 209a. When he was asked to explain "how [] those abnormalities flow out of the work injury," Dr. DeMayo stated:

> That's not really known. [Claimant] has a diagnosis of [CRPS]. It is described that that can spread. It can spread from one part of the extremity, for example the hand proximally as it did in this case, it can flow into other extremities typically on the same side but it's also been described going to the opposite side of the body. And as with the tremors, it's not exactly known how that happens physiologically but it is described.

5

*Id.* at 25; R.R. 210a.

Claimant also submitted the October 14, 2004, IME report of Dr. Kann, and the February 16, 2015, IME report of Dr. Berman. Employer objected to these reports on hearsay grounds, which the WCJ sustained. Nevertheless, the WCJ admitted the reports for the limited purpose of determining whether Employer's contest was reasonable. Dr. Kann diagnosed Claimant as suffering from CRPS of the right upper extremity. Dr. Berman diagnosed Claimant as suffering from a right hand, thumb, and wrist sprain; a right wrist scapholunate ligamentous tear; and RSD/CRPS of the right upper extremity. Claimant also submitted an IME report by John B. Talbott, M.D., which was admitted without objection. Dr. Talbott's report accepted the diagnosis of RSD/CRPS of the right hand and forearm. He observed that Claimant has "an irregular tremor in the right hand" which, he opined, represented "pain manifestation." R.R. 263a. Dr. Kann reported that Claimant's insomnia was "not surprising in view of her chronic pain." *Id*. He opined that Claimant's upper arm pain, shoulder pain, neck pain and headaches were indirectly related to her RSD/CRPS.

Claimant's counsel sought $36,350 in legal fees and submitted a *quantum meruit* fee statement claiming to have worked 145.4 hours on Employer's and Claimant's petitions at a billing rate of $250 per hour. Claimant also requested the WCJ to impose penalties on Employer for not accounting for her concurrent employment at UPMC Lee when it calculated her partial disability benefit rate when she returned to work with Employer between March 18, 2002, and May 2, 2002.

The WCJ partially granted Claimant's modification and review petitions. Crediting Dr. DeMayo's testimony over Dr. Pande's, the WCJ found that Claimant suffered a work-related right wrist strain/sprain; scapholunate ligamentous

6

tear of the right wrist; RSD/CRPS of the upper right extremity; myofascial neck pain; tension headaches; insomnia; memory and cognitive dysfunction; dizziness and balance problems. The WCJ did not find Claimant's right hand tremor or leg problems to be related to her work injury, noting that Dr. DeMayo was uncertain "how that happens physiologically." N.T., 12/30/2015, at 25; R.R. 210a. The WCJ accepted Claimant's testimony in its entirety; however, "what diagnoses are related to her work injury is a medical question, best answered by the expert witnesses." WCJ Decision at 8, Finding of Fact No. 18.

The WCJ credited Claimant's testimony that she did not work for UPMC Lee when she returned to work for Employer from March 18, 2002, to May 2, 2002. The WCJ granted Claimant additional disability compensation in the amount of $141.96 per week for that two-month period of time. The WCJ denied Claimant's penalty petition, however, explaining that "[Employer's] failure to pay [partial disability benefits] appeared to be unintentional, relatively *de [minimis]*, and remote in time." WCJ Decision at 9, Conclusion of Law No. 4.

The WCJ declined to award attorney fees to Claimant's counsel for work he performed in opposing Employer's modification petition. The WCJ concluded that Employer's modification petition based upon Dr. Pande's IRE was a reasonable contest under the "law of the land" at that time. WCJ Decision at 10, Conclusion of Law No. 10 (citing *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 119 A.3d 445 (Pa. Cmwlth. 2015) (*Duffey I*)).[4] The Sixth Edition

---

[4] The Pennsylvania Supreme Court reversed this Court's decision in *Duffey I* on January 19, 2017. *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017) (*Duffey II*). In *Duffey II*, our Supreme Court held that an IRE physician must consider not only the injuries listed on the NCP but also any additional injuries that subsequently arose and were known at the time of the IRE but had not been formally added to the description of the claimant's injury.

of the AMA Guides "was the protocol in place," and Employer arranged for a supplemental rating under the Fourth Edition after this Court decided *Protz I*, 124 A.3d 406, "to comply with the change in the law." WCJ Decision at 10, Conclusion of Law No. 10.

The WCJ concluded, however, that Employer's contest of Claimant's petitions to expand the injury description was unreasonable. The IME reports by Dr. Kann, Dr. Berman, and Dr. Talbott "provided Employer with no defense to Claimant's petitions." *Id.* Indeed, Dr. Talbott's report supported Claimant's case.[5]

The WCJ awarded Claimant's counsel $7,260 in attorney fees, which represented 44 hours of work on Claimant's modification and review petitions at a rate of $165 per hour. In calculating the award, the WCJ found the hourly rate of $250 claimed by counsel in the fee statement "significantly higher than the rate realistically obtainable in western Pennsylvania." WCJ Decision at 11, Conclusion of Law No. 10. Further, the expansion of Claimant's injury "did not involve terribly complex litigation," and Employer "did not mount any meaningful defense to the issue." *Id.*

Claimant appealed to the Board. The Board affirmed, holding that the WCJ did not err in finding that Claimant's tremor in her right hand was not related to her November 3, 2001, work injury; denying Claimant's penalty petition; and declining to award Claimant's counsel the full amount of legal fees as claimed in the *quantum meruit* fee statement. Claimant petitioned for this Court's review.[6]

---

[5] The WCJ noted that he did not consider Dr. Talbott's report "for the veracity of its contents, but rather just for the reasonable contest issue." WCJ Decision at 6 n.4.

[6] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty*

## Appeal

On appeal, Claimant raises five issues for our consideration, which we combine into four for clarity. First, she argues that the WCJ erred in not expanding her work injury to include her right hand tremor. Second, she argues that the WCJ abused his discretion by not imposing a penalty on Employer for its failure to pay partial disability benefits between March 18, 2002, and May 2, 2002. Third, she argues that the WCJ erred in his calculation of attorney fees owed to Claimant's counsel. Finally, she argues that the Board denied her due process by not correcting the WCJ's above-enumerated errors. We address these issues *seriatim*.

## I. Injury Expansion

Claimant argues that the WCJ erred in concluding that she did not prove that her right hand tremor was related to the work injury.[7] She contends that Dr. DeMayo's statement that he was uncertain "how [the tremor] happens physiologically" did not render his opinion that the tremor was work-related equivocal. N.T., 12/30/2015, at 25; R.R. 210a. Dr. Talbott's January 19, 2016, IME report also stated that Claimant's "irregular tremor in the right hand … is a pain manifestation," R.R. 263a, which report was admitted without objection. Claimant further argues that the WCJ erred by excluding Drs. Kann and Berman's IME reports on hearsay grounds. Both reports constitute the statements of an opposing party,

---

*Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[7] As the ultimate fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). A court may overturn a credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational. *Id*.

9

which are admissible as an exception to the rule against hearsay under Rule 803(25) of the Pennsylvania Rules of Evidence. PA. R.E. 803(25).

A claimant bears the burden of demonstrating a right to compensation and establishing all of the elements necessary to support an award. *Calcara v. Workers' Compensation Appeal Board (St. Joseph Hospital)*, 706 A.2d 1286, 1289 (Pa. Cmwlth. 1998). A claimant must establish a causal connection between loss of earning power and the work injury; when the causal connection is not obvious, unequivocal medical evidence is required. *Id.* at 1288. Further, "hearsay medical evidence to which there is no objection must be corroborated by other competent medical evidence, and not simply by the testimony of the claimant or another untrained lay witness." *Id.*[8]

Claimant testified that her right hand tremor did not start until the fall of 2002, after Dr. Ridella removed the short-arm cast. Claimant's modification petition stated that the tremor started "[s]ometime in or prior to 2004." C.R., 964 C.D. 2018, Item 2, at 3. Because the tremor's cause was not obviously connected to the November 3, 2001, work injury, Claimant had to present unequivocal medical evidence. *Calcara*, 706 A.2d at 1288. To that end, Claimant presented medical records and the deposition testimony of Dr. DeMayo.

---

[8] This is an application of the so-called *Walker* rule on the use of hearsay evidence, which states:

> (1) Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding…. (2) Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding … [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand.

*Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). The *Walker* rule has been adopted in other areas of administrative law, including workers' compensation. *Calcara*, 706 A.2d at 1288.

10

In his letter of September 26, 2015, to Claimant's counsel, Dr. DeMayo opined that the tremor was attributable to the 2001 work injury. When testifying before the WCJ, Dr. DeMayo stated that he could not explain "how [the tremor] happens physiologically." N.T., 12/30/2015, at 25; R.R. 210a. Further, when he described the conditions that he attributed to the work injury, Dr. DeMayo did not mention Claimant's right hand tremor:

> [Counsel]: What conditions did you find at that time that were work related?
>
> [Dr. DeMayo]: The initial sprain/strain of the right hand and scapholunate ligament tear of the right wrist, [RSD/CRPS]. Her insomnia was felt to be multifactorial but clearly with an ailment attributed to the pain that was work related. She had myofascial neck pain and tension headaches that were the result of protecting mechanism due to her work-related injuries and she had memory and cognitive dysfunction, as well as dizziness and balance problems which in her case were likely related to her severe sleep disturbances. And as such, were indirectly work related as well.

*Id*. at 29-30; R.R. 214a-15a. In short, Dr. DeMayo's testimony did not constitute unequivocal medical evidence of a causal connection between Claimant's right hand tremor and the November 3, 2001, work injury.

Claimant also submitted three IME reports by Drs. Kann, Berman, and Talbott, but none of them testified. The WCJ excluded Drs. Kann's and Berman's reports on hearsay grounds, and Claimant challenges this ruling. However, Claimant did not raise or preserve this issue before the Board, and it is waived for purposes of this appeal. *Brewer v. Workers' Compensation Appeal Board (EZ Payroll & Staffing Solutions)*, 63 A.3d 843, 849 (Pa. Cmwlth. 2013) ("Failure to raise an issue before

11

the Board results in waiver of the issue upon this Court's review.").[9]  In any case, neither of the IME reports related Claimant's hand tremor to her work injury.

Dr. Talbott's IME report, admitted without objection, stated that Claimant's right hand tremor was a "pain manifestation," but the report did not state that the "pain" was caused by Claimant's work injury.  Even so, Dr. Talbott's statement is not corroborated by other competent medical evidence and thus cannot be given its "natural probative effect."  *Walker*, 367 A.2d at 370 ("Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect … [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]oley on hearsay will not stand.").

For these reasons, Claimant failed to sustain her burden of presenting unequivocal medical evidence that her right hand tremor was causally connected to the November 3, 2001, work injury.  The WCJ did not err in denying Claimant's petition to expand the injury description to include her right hand tremor.

## II. Penalty Petition

Claimant argues, next, that the WCJ erred by not imposing a penalty on Employer for its failure to pay the correct amount of partial disability compensation between March 18, 2002, and May 2, 2002.  She contends that Employer's conduct "became deliberate and intentional" when Employer's answer denied all material allegations in Claimant's modification petition.  Claimant Brief at 23.

Section 435(d)(i) of the Workers' Compensation Act (Act)[10] authorizes the imposition of a penalty of up to 50 percent of the compensation where the

___

[9] Even assuming Claimant did not waive the issue, we disagree with Claimant's proposition that Drs. Kann's and Berman's medical reports were admissible as party admissions under PA. R.E. 803(25).  The mere fact that a physician is hired by a party to conduct an IME does not make the physician an agent of that party.

[10] Section 435(d)(i) states:

employer violates the Act or its regulations. 77 P.S. §991(d)(i). In penalty petition proceedings, the claimant "bears the burden of proving a violation of the Act occurred" and, if met, the burden "shifts to the employer to prove it did not violate the Act." *Dixon v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008). This Court has consistently held that "imposition of a penalty under the Act is *at the discretion of the WCJ and is not required, even if a violation is apparent on the record*." *Curren v. Workers' Compensation Appeal Board (City of Chester)*, 863 A.2d 624, 630 (Pa. Cmwlth. 2004) (emphasis added).

Claimant contends that the WCJ erred and abused his discretion in refusing to impose penalties. In support, she directs the Court to *Lakomy v. Workers' Compensation Appeal Board (Department of Environmental Resources and PIMCO)*, 720 A.2d 492 (Pa. Cmwlth. 1998), and *Croman v. Workers' Compensation Appeal Board (Township of Marple)*, 706 A.2d 408 (Pa. Cmwlth. 1998), as support for this proposition.

In *Lakomy*, 720 A.2d 492, this Court held that the WCJ abused her discretion in refusing to assess penalties even though the employer did not comply with the Board's order to pay a claimant compensation benefits. The WCJ denied the claimant's request for penalties for the stated reason that she had been overpaid

---

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §991(d)(i).

13

by more than $40,000 in compensation because of credits against her disability benefits not taken by the employer. The WCJ reasoned that the employer's violation of the Act was more than mitigated by the overpayment of benefits, and the Board affirmed. In reversing the Board, this Court held that the WCJ abused her discretion by considering matters not relevant to the employer's violation of the Act.

In *Croman*, 706 A.2d 408, the claimant filed a penalty petition against his employer for failure to issue a timely notice of compensation payable. The WCJ denied the petition, and the Board affirmed. Vacating the Board's decision, this Court noted that the Board held that the WCJ had "erred as a matter of law in concluding that [the employer] had not violated the Act." *Id.* at 410. Because the WCJ had found facts that showed a violation of the Act but refused "to assess penalties *or otherwise say why penalties were unwarranted*," this Court held that the WCJ abused his discretion. *Id.* at 410. (emphasis added).

Claimant's reliance on *Lakomy* and *Croman* is misplaced. Unlike *Croman*, here the WCJ agreed that Employer violated the Act by not paying the correct amount of partial disability benefits for a two-month period of time in 2002. Further, the WCJ fully explained why a penalty was unwarranted, *i.e.,* because Employer's failure "appeared to be unintentional, relatively *de [minimis]*, and remote in time." WCJ Decision at 9, Conclusion of Law No. 4. Unlike *Lakomy*, the WCJ considered the factual circumstances that were relevant to Employer's violation. The WCJ has this discretion not to impose penalties. *Lakomy*, 720 A.2d at 496.

Claimant argues that Employer's failure to pay her partial disability benefits was "deliberate and intentional" because Employer contested liability in its answer to Claimant's modification petition. This is speculative. The record is

14

devoid of any evidence that at the time Claimant filed her modification petition, Employer even realized that it owed Claimant partial disability benefits dating to 2002. In sum, the WCJ did not abuse his discretion in denying Claimant's penalty petition.

### III. Unreasonable Contest Counsel Fees

Third, Claimant argues that the WCJ erred by not awarding her counsel the entire $36,350 in legal fees he requested, or 145.4 hours of work at $250 per hour. Claimant contends that Employer's modification petition, based upon Dr. Pande's IRE, was "completely inconsistent" with Claimant's treatment history and the three IME reports prepared by Employer's "own medical experts." Claimant Brief at 26. The WCJ abused his discretion in reducing the fee award to $7,260, which represented 44 hours billed at $165 per hour. Counsel has been awarded an hourly rate higher than $165 per hour in other cases and all 145.4 hours were appropriate because "the expansion of [the] work injury found by the WCJ to have been unreasonably contested was identical to the basis on which [Claimant] attacked the opinion of [Dr. Pande]." Claimant Brief at 31-32.

Under Section 440 of the Act, a claimant who is successful in whole or in part in the litigation is entitled to an award of attorney fees, unless the employer's contest is reasonable.[11] 77 P.S. §996. *Frankford Hospital v. Workers'*

---

[11] Section 440, added by the Act of February 8, 1972, P.L. 25, provides:

> (a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings:

*Compensation Appeal Board (Walsh)*, 906 A.2d 651, 656 (Pa. Cmwlth. 2006). Whether an employer's contest is reasonable is a question of law fully reviewable on appeal. *Essroc Materials v. Workers' Compensation Appeal Board (Braho)*, 741 A.2d 820, 826 (Pa. Cmwlth. 1999).

A contest is reasonable where the employer presents medical evidence that is contrary to the claimant's evidence and where it is evident that the employer's contest is not frivolous or done to harass the claimant. *United States Steel Corporation v. Workers' Compensation Appeal Board (Luczki)*, 887 A.2d 817, 821 (Pa. Cmwlth. 2005). It is axiomatic that "the reviewing court must look at the totality of the circumstances," not whether there is a conflict in the evidence on which one party prevails. *Majesky v. Workmen's Compensation Appeal Board (Transit America, Inc.)*, 595 A.2d 761, 764 (Pa. Cmwlth. 1991). The reasonableness of an employer's contest depends on whether the issue involved a genuine dispute, which can be a legal or factual issue, or both. *McGuire v. Workmen's Compensation Appeal Board (H.B. Deviney Co., sub. of J.M. Smucker Co.)*, 591 A.2d 372, 374 (Pa. Cmwlth. 1991).

---

Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

(b) If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

77 P.S. §996.

16

Claimant argues that Employer's modification petition presented an unreasonable contest because the WCJ rejected Dr. Pande's conclusion and, further, Claimant's medical records showed that her conditions had progressed over the years. We disagree. The fact that the WCJ did not credit Employer's evidence does not mean that Employer's contest was unreasonable. This Court must look at the totality of the circumstances to determine whether there was a genuinely disputed issue in this case.

When Dr. Pande performed the IRE on April 7, 2015, the law at the time authorized the IRE physician to evaluate only the diagnoses, or injured body parts, that were identified in the NCP. Stated otherwise, Dr. Pande's IRE did not become invalid simply because it was subsequently determined that Claimant sustained additional work-related injuries. *See Duffey I*, 119 A.3d 445. The Pennsylvania Supreme Court reversed *Duffey I* in January 2017, after Dr. Pande had performed the IRE. At the time of Dr. Pande's examination, it was reasonable for him to evaluate the established work injury as accepted by Employer, which was a strain/sprain of the right hand. Thus, the WCJ did not err in finding that Employer's modification petition was reasonable.

As for the fee issue, the WCJ found that counsel devoted a large portion of his time on the validity of the IRE, which involved a reasonable contest. The only issue that was unreasonably contested was the Employer's opposition to the expansion of Claimant's injury. The WCJ found, based on his review of the record and experience, that 44 hours was a reasonable estimate of the time Claimant's counsel needed to prepare and litigate her modification and review petitions, which the WCJ noted "did not involve terribly complex litigation" and to which Employer "did not mount any meaningful defense." WCJ Decision at 12, Conclusion of Law

17

No. 10. The WCJ reduced the hourly rate to $165 per hour, finding the hourly rate claimed by Claimant's counsel "significantly higher than the rate realistically obtainable in western Pennsylvania." *Id*. In making a finding "as to the amount and the length of time for which such counsel fee is payable," the WCJ must consider "the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended." Section 440(b) of the Act, 77 P.S. §996(b). The WCJ explained his findings, and we hold that he did not abuse his discretion in calculating the fee award. That Claimant's counsel was awarded an hourly rate higher than $165 per hour in other cases does not prove that the WCJ abused his discretion in the present case.

## IV. Due Process Claim

Finally, Claimant argues that the Board and the WCJ, by failing to grant the relief she requested, denied her due process. Claimant presents only conclusory arguments without pointing out how the practice or procedure before the WCJ and the Board was improper, or which of her constitutional rights was violated. Claimant cites the United States Supreme Court's decision in *Goldberg v. Kelly*, 397 U.S. 254 (1970), for the proposition that a pre-determination hearing was required before welfare benefits were terminated. It is unclear, however, how the *Goldberg* decision is relevant to the present case. We thus reject Claimant's due process claim.

## Conclusion

Based on the foregoing reasons, we conclude that the WCJ did not abuse his discretion in finding that Claimant's right hand tremor was not causally connected to the November 3, 2001, work injury; declining to impose a penalty on Employer for its failure to pay partial disability benefits between March 18, 2002, and May 2, 2002; and assessing attorney fees against Employer for a partial

18

unreasonable contest in the amount of $7,260 (44 hours of work at $165 per hour). We further hold that Claimant's due process claim lacks merit. Accordingly, we affirm the Board's June 26, 2018, orders.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cathy A. Haney,                    :

             Petitioner          :

                               :

         v.                 : No. 963 C.D. 2018

                               : No. 964 C.D. 2018

Workers' Compensation Appeal Board  :

(Commonwealth of Pennsylvania,      :

Military and Veterans Affairs and       :

INSERVCO Insurance Services, Inc.),   :

           Respondents     :

# **O R D E R**

AND NOW, this 25th day of April, 2019, the orders of the Workers' Compensation Appeal Board dated June 26, 2018, in the above captioned matters are AFFIRMED.

_____

MARY HANNAH LEAVITT, President Judge