IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert J. Egizio,                          :
                    Petitioner             :
                                           :
        v.                                 :    No. 1084 C.D. 2022
                                           :
Consol Pennsylvania Coal Company,          :
LLC (Workers' Compensation                 :
Appeal Board),                             :
                                           :
                    Respondent             :    Submitted: May 12, 2023

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                        FILED:  July 27, 2023

        Robert J. Egizio (Claimant) petitions this Court for review of the September
7, 2022 Order of the Workers' Compensation Appeal Board (Board), which affirmed
the decision of a workers' compensation judge (WCJ) to deny Claimant's Penalty
Petition against Consol Pennsylvania Coal Company, LLC (Employer).  Claimant
argues that the WCJ's denial of the Penalty Petition contradicts an order that the
WCJ had previously issued, and that penalties are warranted by Employer's
allegedly egregious violations of the Workers' Compensation Act (Act).[1]  Upon
review, we affirm.

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

# I. Background

## A. Claimants' Injuries and the *Egizio I* Decision

Claimant was working for Employer as a miner when he sustained an injury to his left knee on June 25, 2014. Certified Record (C.R.), Item No. 17, 9/19/2019 WCJ Decision (WCJ Decision I), Finding of Fact (F.F.) No. 10(b). He immediately sought treatment at a hospital emergency room, where staff provided him with crutches and a brace. *Id.*, F.F. No. 10(e). On the following day, Claimant returned to work, where he was assigned to a mix of light duty and regular duty to accommodate his knee injury. *Id.*, F.F. No. 10(h). Employer covered Claimant's medical expenses, but did not issue a Notice of Compensation Payable (NCP) or any other Workers' Compensation Bureau (Bureau) documents. *Id.*, F.F. No. 15(b). On January 13, 2015, a physician determined that Claimant was fully recovered from his knee injury and released him back to full-duty work. *Id.*, F.F. No. 11.

Despite being reassigned for several months, Claimant later testified that he continued to receive his regular wages and work his usual number of hours following his June 25, 2014 work injury. C.R., Item No. 26, 1/24/2017 Hearing Transcript (H.T.), Notes of Testimony (N.T.) at 55. A statement of wages later submitted by Employer indicated an average weekly wage (AWW) of $2,640.53. *See* C.R., Item No. 21.

On January 13, 2016, Claimant sustained another work injury to his left knee. C.R., Item No. 17, 9/19/2019 WCJ Decision, F.F. No. 1. Employer accepted liability for the injury via an NCP, in which it described the injury as a left knee contusion. *Id.* Claimant's treating physician, Dr. David Welker, immediately took Claimant out of work. *Id.*, F.F. No. 10(k). An magnetic resonance image (MRI) revealed torn

2

ligaments in Claimant's left knee, for which Dr. Welker performed surgery on February 16, 2016. *Id.*

Claimant has filed a total of six petitions relating to this case, the first five of which have already reached this Court. One was a Review Petition, filed on October 17, 2016, through which Claimant sought to amend the injury description to include a torn meniscus. *Id.*, F.F. Nos. 2, 23. Next was a Claim Petition, in which Claimant alleged a wage loss resulting from his June 25, 2014 knee injury, for which he was entitled to partial disability benefits, various medical expenses, and unreasonable contest attorney fees. *Id.*, F.F. 3. Claimant also filed a Penalty Petition alleging that Employer violated the Act through its failure to accept or deny liability for the June 25, 2014 work injury. *Id.*, F.F. No. 4. On May 31, 2017, Claimant filed two additional Penalty Petitions, alleging that Employer further violated the Act by failing to pay medical bills resulting from both the 2014 and 2016 injuries. *Id.*, F.F. Nos. 7-8. For its part, Employer filed a Termination Petition on November 3, 2016, in which it alleged that Claimant had fully recovered from his January 13, 2016 injury as of October 17, 2016, the date of an independent medical examination (IME) by Dr. Jeffrey Kann. *Id.*, F.F. Nos. 5, 14(a).

In a decision dated September 19, 2019, a WCJ granted Claimant's Review Petition and amended the injury description to include a tear of the meniscus in the left knee. *Id.*, Order. The WCJ also determined that Claimant sustained "a fracture to the femoral condyle and an injury to the medial collateral ligament" as a result of his June 25, 2014 work injury. *Id.*, F.F. No. 25. In addition, the WCJ granted the Claim Petition, finding that Claimant had credibly testified that he "worked the light[-]duty job with a wage loss after the 2014 injury." *Id.*, F.F. No. 22; Conclusion of Law (C.L.) No. 2. Accordingly, the WCJ directed Employer to pay partial

3

disability benefits "to the extent [Claimant] had a wage loss from June 25, 2014 to January 13, 2016." *Id.*, Order. However, the WCJ also accepted Dr. Kann's testimony that Claimant had fully recovered from his January 13, 2016 injury as of October 17, 2016, and therefore granted Employer's Termination Petition. *Id.*, F.F. Nos. 23, 26; C.L. No. 4. Thus, the WCJ suspended Claimant's benefits for the June 25, 2014 injury, and terminated benefits for the January 13, 2016 injury. *Id.*, Order. Lastly, the WCJ denied all three Penalty Petitions, concluding that Employer did not violate the Act. *Id.*, F.F. No. 27; C.L. No. 3.

Claimant and Employer both appealed to the Board. Employer also requested supersedeas, which the Board denied in a November 6, 2019 order. *See* C.R., Item No. 19. In an order dated September 9, 2020, the Board affirmed "the WCJ's determination regarding the nature of the work-related injuries." C.R., Item No. 34, 9/9/2020 Board Opinion (Op.) at 16. By the Board's interpretation, the WCJ concluded that Claimant was fully recovered from both injuries. *Id.* at 18. Thus, the Board regarded the WCJ's suspension of Claimant's benefits for the June 25, 2014 injury as legal error, and modified the decision to reflect that Employer was entitled to a termination of benefits for *both* the 2014 and 2016 injuries as of October 17, 2016. *Id.* However, the Board ruled the issue to be "moot," as Claimant did not suffer any actual wage loss as a direct result of the earlier injury; thus, Employer owed no partial disability benefits. *Id*. at 18-19.

On appeal to this Court, Claimant argued that the Board erred as a matter of law by terminating his partial disability benefits for the June 25, 2014 injury.[2] *See*

---

[2] The primary difference between the suspension and termination of benefits is that, when benefits have been *suspended*, the claimant may seek reinstatement of total disability payments within three years of the last payment of benefits, or the maximum 500 weeks allowed for partial disability, whichever is later. *Sloane v. Workers' Comp. Appeal Bd. (Children's Hosp. of Phila.)*, 124 A.3d 778, 785 (Pa. Cmwlth. 2015).

4

*Egizio v. Consol Coal Co. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 1055 C.D. 2020, filed Jan. 20, 2022) (*Egizio I*), slip op. at 5. We agreed with Claimant that the WCJ's decision to suspend Claimant's benefits for the 2014 injury was supported by the evidence presented, including testimony by Dr. Welker, who "explicitly declined to say that Claimant had fully recovered from the 2014 injury." *Id.* at 6. Thus, we held that the Board erred in terminating Claimant's benefits, and reinstated the WCJ's suspension. *Id.* at 7.

While reversing the Board's termination of Claimant's benefits, we nonetheless agreed that partial disability benefits were not due from the period from June 25, 2014 to January 13, 2016. *Id.* We noted that the WCJ only awarded Claimant such benefits "to the extent he had a wage loss for the period of June 25, 2014, through January 13, 2016," without stating whether any specific wage loss actually occurred. *Id.* Given Claimant's testimony that he worked for the same number of hours and for the same hourly rate until January 13, 2016, we determined that "there [was] insufficient evidence to support a finding that Claimant suffered a wage loss from the 2014 injury." *Id.* Thus, we concluded that the WCJ was in error when he found that Claimant "worked . . . with a wage loss from the 2014 injury"; however, we determined that such error was "harmless" due to the absence of any actual wage loss. *Id.* Other than the reversal of its termination of benefits, we affirmed the Board's order in all other respects. *Id*. Neither Claimant nor Employer sought to appeal from our decision to the Supreme Court.

### B. Claimant's Fourth Penalty Petition

While the above petitions were on appeal before the Board, Claimant filed still another Penalty Petition on January 23, 2020. *See* C.R., Item No. 2. Therein, Claimant alleged that Employer violated the Act by failing to pay partial disability

benefits following his June 25, 2014 injury. *Id.* Claimant argued that such benefits became due upon the denial of Employer's supersedeas request on November 6, 2019. *Id.* Employer timely filed an answer on January 24, 2020, in which it asserted that Claimant suffered no actual wage loss following the June 25, 2014 injury, rendering penalties unwarranted. *See* C.R., Item No. 4.

The WCJ held four hearings on the fourth Penalty Petition. At a February 14, 2020 hearing, Employer argued that Claimant's own testimony confirmed that, following his June 25, 2014 injury, Claimant worked the same number of hours, and received the same wages. C.R., Item No. 11, 2/14/2020 H.T., N.T. at 8. Employer argued that any drop in Claimant's pay between June 25, 2014, and January 13, 2016, was the result of an industry-wide downturn that affected everyone's wages. *Id.* at 9. Claimant retorted that a loss of earning power should not be established through Claimant's testimony, but only through wage information that Employer had not yet provided.[3] *Id.* at 10-11. Furthermore, Claimant argued, the WCJ had already determined in his September 19, 2019 decision that Claimant suffered a wage loss. *Id.* at 13. The WCJ responded as follows: "Yeah, but I don't know where—as I sit here today[,] I don't know where I got that. I don't know why I was under the impression that there was a wage loss." *Id.* At a second hearing, on July 7, 2020, Claimant further argued that he could not have credibly testified as to a wage loss when he did not know his AWW, which the WCJ had not yet determined, or even how an AWW is calculated. C.R., Item No. 12, 7/7/2020 H.T., N.T. at 10.

---

[3] It was Claimant's burden to show (1) that he had a loss of earning power and (2) that it was caused by the work injury. The burden then shifts to the employer to show that the "loss of earnings was attributable to something other than his work injury, such as economic circumstances." *Trevdan Bldg. Supply v. Workers' Comp. Appeal Bd. (Pope)*, 9 A.3d 1221, 1225 (Pa. Cmwlth. 2010). In this case, the burden had not even shifted to Employer, since the question of whether Claimant lost earning power was already settled.

At the third hearing, on August 21, 2020, Employer offered Claimant's wage information and other employment records as evidence. C.R. Item No. 13, 8/21/2020 H.T., N.T. at 4-5. According to the records submitted, Claimant earned $61,386.67 in gross pay in the first six months of 2014. *See* C.R., Item No. 31. Following the June 25, 2014 injury, Claimant's pay then *increased* to $76,109.76 in the second half of 2014, then declined to $62,475.85 in the first half of 2015. *Id.* In the second half of 2015, Claimant's pay further decreased to $41,268.62. *Id.* Employer also presented a letter from a representative of its human resources office, in which the representative explained that, from May 2015, through March 2016, all company employees "experienced a reduction in work hours due to an economic downturn[,] thus leading to a decrease in wages." C.R., Item No. 30. Claimant also offered his own testimony at the August 21, 2020 hearing, in which he explained that he did not understand how partial disability benefits are calculated. C.R. Item No. 13, 8/21/2020 H.T., N.T. at 47. On cross-examination, Claimant stated that he did not know about an economic downturn that caused a loss of income for other company employees. *Id.* at 55-56.

Finally, at a December 11, 2020 hearing, Claimant argued that Employer engaged in "self-help" by unilaterally withholding partial disability benefits after the Board denied Employer's supersedeas request. C.R., Item No. 14, 12/11/2020 H.T., N.T. at 8. Claimant compared the facts in his case to those in *Moody v. Workmen's Compensation Appeal Board (Philadelphia Inquirer)*, 560 A.2d 925, 927 (Pa. Cmwlth. 1989), in which this Court held that the "proper course" for an employer that loses before the WCJ "is to pay as ordered, file for supersedeas, and if denied then to apply to the [f]und for reimbursement if [the e]mployer is ultimately successful." C.R., Item No. 14, 12/11/2020 H.T., N.T. at 9. Employer responded

7

that *Moody* is inapposite because, in that case, the employer simply refused to pay benefits that it had been ordered to pay, based on the belief that it would ultimately prevail on appeal. *Id.* at 13. In this case, by contrast, Employer was not "ordered to pay anything." *Id.* at 14.

In a January 18, 2022 decision, the WCJ again concluded that "Employer has not committed a violation of the . . . Act." C.R., Item No. 6, 1/18/2022 WCJ Decision, F.F. No. 12. The WCJ explained that he only awarded benefits in his September 19, 2019 decision "to the extent there was any wage loss, because [the WCJ] felt it was unclear as to whether there was in fact any wage loss." *Id.*, C.L. No. 1. As the Board has already "issued a decision stating that there was no wage loss during that period," the WCJ explained that he was "bound by that decision," and that it was "impossible . . . to find that there was a violation of the Act." *Id.* Thus, the WCJ denied the fourth Penalty Petition. *Id.*, Order.

Claimant appealed to the Board, which affirmed, concluding that Employer "cannot be penalized for failing to pay wage loss benefits for a non-existent wage loss." C.R., Item No. 9, 9/7/2022 Board Op. at 9. This appeal followed.[4]

## II. Issues

On appeal, Claimant argues that the WCJ's denial of his fourth Penalty Petition was an error of law in that it contradicts the WCJ's previous finding that Claimant suffered a wage loss following his June 25, 2014 injury. Claimant further argues that this Court's *Egizio I* decision "created an ambiguity" by referring to

---

[4] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

8

Claimant's "nonexistent wage loss" while simultaneously reversing the Board's termination of partial disability benefits. Claimant's Br. at 5.

## III. Discussion

The award of penalties in a workers' compensation proceeding is governed by Section 435(d) of the Act, added by Act of February 8, 1972, P.L. 25, which provides that a WCJ "shall have the power to impose penalties . . . for violations of the provisions of this [A]ct or such rules and regulations or rules of procedure." 77 P.S. § 991(d). Section 435(d)(i) further provides that an employer found to have violated Act provisions "*may* be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable." 77 P.S. § 991(d)(i) (emphasis added). While the imposition of penalties requires the finding of a violation, such a finding does not mandate the imposition of a penalty. *Dworek v. Workmen's Comp. Appeal Bd. (Ragnar Benson, Inc. & Nat'l Union Fire Ins. Co.)*, 646 A.2d 713, 716 (Pa. Cmwlth. 1994). Rather, the imposition of a penalty is left to the WCJ's sound discretion. *Lakomy v. Workers' Comp. Appeal Bd. (Dep't of Env't Res. and Pimco)*, 720 A.2d 492, 495 (Pa. Cmwlth. 1998).

Instantly, Claimant argues that the WCJ's denial of his fourth Penalty Petition contradicts the WCJ's previous finding that Claimant worked "with a wage loss after the 2014 injury as [Claimant's] testimony is uncontradicted." C.R., Item No. 6, 9/19/2019 WCJ Decision, F.F. No. 22. Claimant maintains that he was entitled to partial disability benefits when that decision was issued, and that the Board's denial of supersedeas on November 6, 2019 left Employer without a court order or any other operative document relieving its obligation to pay those benefits. In support, Claimant refers to *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corp.)*, 676 A.2d 690, 694 (Pa. Cmwlth. 1996), in which this Court held

9

that, as soon as an employer's supersedeas petition is denied, the employer is "obligated to commence payments in accordance with the order of the" WCJ. According to Claimant, the continuous, unilateral refusal to pay such benefits constitutes "an egregious and longstanding violation of the Act," for which penalties clearly ought to be awarded. Claimant's Br. at 17. While acknowledging that the Board reversed the WCJ's finding of a wage loss, Claimant argues that its decision is immaterial in this case, as the Board's decision "was eventually reviewed and reversed by the Commonwealth Court." *Id.* at 19 n.4.

Claimant's arguments are unavailing. While it is true that the WCJ's 2019 decision found Claimant to have worked with a wage loss, the decision was inconsistent on that question, as the WCJ nevertheless declined to award benefits based on any specific loss amount. Rather, the WCJ simply directed Employer to award benefits "to the extent [Claimant] had a wage loss from June 25, 2014 to January 13, 2016." C.R., Item No. 22, WCJ Decision I, Order. The WCJ's decision therefore created a discrepancy, which the Board resolved by holding that the finding of a wage loss was in error. We agreed, holding that "[s]ubstantial evidence does not exist to support an award of wage loss benefits." *Egizio I*, slip op. at 7. However, since the WCJ qualified his award of benefits by stating that they were to be paid only "to the extent [Claimant] had a wage loss," we determined that any resulting error was "harmless." *Id.*

Contrary to Claimant's arguments, our reversal of the Board's decision to terminate benefits for the 2014 injury does not support the premise that wage loss benefits are due for the period from June 25, 2014 to January 13, 2016. Rather, as we explained, the termination of benefits was improper because Dr. Welker declined to state that Claimant was fully recovered from his 2014 injury. *Id.* at 6. We reversed

10

the Board and reinstated the WCJ's suspension on the ground that "suspension of benefits is proper if the claimant's work-related disability exists but does not manifest itself in a loss of earning power." *Id.* (citing *Consol. Freightways v. Workmen's Comp. Appeal Bd. (Jester)*, 603 A.2d 294 (Pa. 1992)). Because we agreed with the Board that Claimant's wage loss was "nonexistent," we affirmed its order to the extent that it imposed no obligation on Employer to pay partial disability benefits for the period from June 25, 2014 to January 13, 2016. *Id.* at 7.

As previously noted, Claimant did not seek to appeal from our decision in *Egizio I*, which is now final. Thus, when the fourth Penalty Petition was before the WCJ, the sole issue to be determined was whether penalties should be imposed for Employer's failure to pay partial disability benefits for a nonexistent wage loss. The WCJ correctly concluded that, in the light of this Court's and the Board's prior decisions, "it is impossible . . . to find that there was a violation of the Act, let alone to award the payment of any benefits or penalties." C.R., Item No. 6, 1/18/2022 WCJ Decision, Order. Accordingly, Claimant has not met his burden of proof that his fourth Penalty Petition should have been granted.

### IV. Conclusion

For the foregoing reasons, we affirm the Board.

_____
ELLEN CEISLER, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert J. Egizio, : 
           Petitioner : 
            : 
    v. : No. 1084 C.D. 2022
            : 
Consol Pennsylvania Coal Company, : 
LLC (Workers' Compensation : 
Appeal Board), : 
           Respondent : 

# **O R D E R**

AND NOW, this 27th day of July, 2023, the order of the Workers' Compensation Appeal Board, dated September 7, 2022, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge